CAVE v. HOME INSURANCE CO.

1. AGENCY—JURIES.—The scope of agency and powers of an agent are questions for the jury, and whether agent here had power to change conditions of policy in parol, properly submitted to the jury.

2. INSURANCE—CONTRIBUTIVE INSURANCE.—Under act of 1896 (22 Stat., 113), contributive insurance must be prorated on basis of insurance value fixed by insurer and insured at issuance of policy.

3. NEW TRIAL.—ERROR OF LAW for Judge to refuse new trial where jury disregards his instructions.

Before BENET, J., Barnwell, winter term, 1899. Reversed.

Action by W. M. Cave against Home Insurance Co. Defendant appeals on following exceptions:

"I. That his Honor, the presiding Judge, erred, be it respectfully submitted, in ruling out of the evidence and in refusing to allow the defendant to introduce in evidence the record of the proceedings to set off the homestead of E. W. Vogel, under the circumstances under which said record was offered in evidence.

"II. That his Honor, the presiding Judge, erred, as it is respectfully submitted, in charging the jury as follows: 'I cannot hold that the insurance agency referred to in this case could not bind their company by their acts or by their sayings with regard to additional insurance or a conveyance of the property during the life of the policy,' but should have charged the jury that the policy of insurance sued on is a written contract, one of the provisions of which being that 'if this policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of the company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement, indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.' No agent of the company could waive any of the provisions or conditions of the policy by verbal agreement or in any other way than is provided in said provision of the policy, and that if the jury should find that additional insurance had been taken out without the consent or permission of the defendant company indorsed on the policy, or that if 'any change other than by the death of the insured in the interest, title or possession of the subject of the insurance took place, the policy became

void, unless the company had agreed to the same in writing indorsed on the policy.'

"III. That his Honor, the presiding Judge, erred, as it is respectfully submitted, in charging the jury as follows: 'If you are satisfied by the preponderance of the evidence that the agent or agents of the Home Insurance Company consented to the additional insurance, then I hold that that would bind the company, his principal;' whereas, his Honor should have charged that the company could only be bound by a written consent indorsed upon the policy.

"IV. That his Honor, the presiding Judge, erred, as it is respectfully submitted, in charging the jury as follows: 'If you find by the preponderance of the evidence that the agent of the company was made aware of the conveyance of the property from one owner to another owner during the life of the policy and made no objections, but continued the policy in spite of that, then I hold and so charge you that would bind the company, his principal;' whereas, his Honor, the presiding Judge, should have charged that the company could only be bound by a written agreement to that effect indorsed upon the policy.

"V. That his Honor, the presiding Judge, erred, as it is respectfully submitted, in charging the jury that the 'insurance agency referred to in this case could bind their company by their acts and sayings with regard to additional insurance, or a conveyance of the property during the life of the policy,' and that 'if the agent of the company was made aware of the conveyance of the property from one owner to another owner during the life of the policy and made no objection, but continued the policy in spite of that, then I hold and so charge you that would bind the company, his principal,' without explaining to the jury the difference between general agents, who bind the company by their acts, and special agents, who cannot.

"VI. That his Honor, the presiding Judge, erred, as it is respectfully submitted, in charging the jury, 'If you come to the conclusion that the local agent voluntarily agreed to a

change of the contract, that will bind the principal,' without explaining to the jury that none but a general agent could so change the contract so as to bind the principal, and that they must find from the evidence that 'the local agent' was a general agent, and should have explained the distinction between a general agent and a special agent.

"VII. That his Honor, the presiding Judge, erred, as it is respectfully submitted, after charging defendant's third request, which is in the words, 'That no waiver is binding upon the company unless consent was given and indorsed upon the policy, as required by the warranties in the policy,' to add, as his Honor did, the words, 'That is true, unless even that stipulation is also waived. It is a question for the jury to say whether there was a waiver made binding the company.'

"VIII. That his Honor, the presiding Judge, erred, as it is respectfully submitted, after charging defendant's fifth request as asked and reading the law to the jury, to add, as his Honor did, as follows: 'You are to say what evidence is before you as to the insurable value of the property as agreed by the insurer and the insured, and if there has been additional insurance in two different companies, or rather two or more policies, it does not require to be in different companies, it should be contributive insurance, and if the amount exceeds the insurable value, then the amount would have to be divided pro rata; of course, I cannot say what is the amount in this case agreed to between the insurer and the insured, and he is not bound by anything agreed to by any other person.'

"IX. That his Honor, the presiding Judge, erred in law, as it is respectfully submitted, in refusing defendant's motion for a new trial on the minutes, when the evidence was clear and conclusive that the insurable value of the property was agreed upon at the time of the issuing of the policy, and the evidence is clear and undisputed that two other policies were written upon the same property, the aggregate sum of such insurance exceeded the insurable value of the property as agreed upon as aforesaid, and, therefore, the jury should

have found for the plaintiff only his pro rata share of said insurance."

*Mr. Robert Aldrich,* for appellant, cites : *As to power of agents:* 66 N. Y., 279; 73 N. Y., 5; 13 Kan., 383; 15 Kan., 504; 40 N. W. R., 122; 52 S. C., 224; 17 I. L. J., 62, 456. *As to releasing forfeiture by notice to agent:* 2 Plip., 576; 58 N. H., 414; 1 I. L. J., 203; 41 N. W. R., 373; 65 Ia., 454; 13 N. E. R., 902; 26 N. E. R., 34; 45 N. W. R., 1047; 46 N. W. R., 481; 144 Mass., 46; 33 N. J., 487; 73 N. Y., 5; 45 N. W. R., 1; 27 S. C., 132; 37 S. C., 56; 70 N. Y., 593.

*Messrs. Bellinger, Townsend & O'Bannon,* contra, cite : *As to waiver of stipulations of policy by agent by parol:* 51 S. C., 546; 52 S. C., 224; 50 N. E. R., 774; 38 N. E. R.,835. *No request to charge distinction between general and special agent, and failure not error:* 27 S. C., 268.

April 13, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE. On the 7th day of November, 1896, one E. M. Vogel procured the defendant to issue a policy of insurance for $600 to protect his two-story wooden building, in the town of Barnwell, S. C., for which he paid the usual premium. The term of the policy was for one year. By the stipulation of the policy, loss under it was to be paid to Mrs. Emma Camp. On the          day of February, 1897, the mortgagee, Mrs. Camp, for value, assigned her note and mortgage to William M. Cave, who at once notified defendant's agents at Barnwell of such assignment of said mortgage to him, whereupon said agents indorsed in writing upon said policy that loss, if any, under said policy should be payable to the said William M. Cave. On the 17th February, 1897, the Old Dominion Fire Association of Alexandria, Virginia, also issued a policy of insurance upon said building for $500, for one year. On the 20th March, 1897, the London, Liverpool and Globe Insurance Company also issued a policy of insurance on said building for $600, but this policy was taken

in the name of *Mrs.* A. H. Vogel, to whom the said E. W.
Vogel had sold and by deed conveyed the said house and lot
to the said Mrs. Vogel, his wife.   Under the policy issued
by defendant, which is on the printed New York standard, in
accordance with provisions of the act of the General Assem-
bly of this State, the value of the buildings insured was fixed
at $1,000, and the insured and the insurer agreed to fix the
total amount of insurance to be carried on the insured build-
ing (including this policy) at $600.   On the policy issued by
the Old Dominion Fire Insurance Association no reference
was made to the requirements of the act of 1896; but on the
policy issued by the London, Liverpool and Globe Insurance
Company, in accordance with the provisions of said act of
1896, the insurer and insured agreed that the actual value of
the building insured was $3,000, and also agreed to fix the
total amount of insurance to be carried on the insured build-
ing (including the policy issued by the London, Liverpool
and Globe Co.) at $1,700.   There was no indorsement upon
the policy by any agent of the defendant that the defendant
had any knowledge of, or waived its right to object to, the
sale of the building by E. H. Vogel to his wife, Mrs. E. H.
Vogel, *or* that it consented that the insured should increase,
by one or more policies, the insurance carried on said build-
ing.  The building insured was burned on the      day of Oc-
tober, 1897.   When the plaintiff brought suit against the
Home Insurance Company of New York, as the only defend-
ant, to recover the $600, with interest thereon from the 15th
March, 1898, at seven per cent. interest, the said defendant
answered, denying any liability under its policy, because it
alleged that no indorsement in writing on the said policy
showed its consent to the change of ownership from E. H.
Vogel to his wife, *or* its consent to the increase of the insur-
ance by another or more policies of insurance upon said build-
ing.  To this position by the defendant, the plaintiff by its tes-
timony showed that the attorney for Mrs. Vogel and of the
plaintiff informed the firm of Calhoun, Butler & Co., as
agents of the defendant, of said sale by Mr. Vogel to his

wife, and also that the plaintiff informed said agent that the increased insurance would be taken, to which no objection was made, but consent was given. The agents denied that Mr. O'Bannon, as attorney, had ever informed them of such change of ownership, and also denied that the plaintiff had asked them if Mr. O'Bannon had informed them of such change of ownership of the building insured, and that they admitted to the plaintiff that Mr. O'Bannon had so informed them. Such agents also denied that the plaintiff had told them at the time, or afterwards, of the increase in the insurance and that they agreed thereto. These were issues of fact, which were solved by the jury in favor of the plaintiff. When the Circuit Judge submitted his views of the law to the jury, he calmly and clearly pointed out to them that it was their duty, under the testimony, to determine what kind of an agency for the defendant the firm of Calhoun, Butler & Co. were; that if the scope of such agency permitted such firm of Calhoun, Butler & Co. to waive the stipulations of the policy issued by the defendant, by consenting to a change of ownership of the building, while such policy continued, *or* an increase in the amount of insurance on the building, by writing on the policy of insurance such waiver, that then such agents could waive such change in ownership and of the increase on the building *by parol*. The jury had testimony of this character before them as to agency of the firm of Calhoun, Butler & Co. for the defendant. *First*. A notice in the policy itself, signed by the president and countersigned by the secretary of the defendant company, that "This policy shall not be valid until countersigned by the duly authorized agent of the company at Barnwell Court House, S. C.," and that the firm of Calhoun, Butler & Co. were such agents. *Second*. That Calhoun, Butler & Co., such agents, actually indorsed in writing on said policy issued to the plaintiff, a change of the person to whom the loss, if any such, should be paid, and that William M. Cave, the said assignee of the mortgagee, saw said firm of Calhoun, Butler & Co., as such agents, so indorse such change on the policy. *Third*. That

23—57

the policies issued for the defendant by said firm of Calhoun, Butler & Co. were denominated not only as a policy issued by *"Barnwell, S. C., Agency of the Home Insurance Company of New York,"* but that such policies were numbered according to the policies *issued by such firm,* and that the policy issued to plaintiff was numbered *"399,"* thus manifesting the scope of such agency.

The jury found that such agency was invested with full power to waive stipulations in writing and also by parol. The Circuit Judge was careful throughout his charge to limit the power of the agency to the scope of such agency as created by the defendant itself. The Circuit Judge followed faithfully the decisions of this Court, in *Wilson* v. *Ins. Co.,* 51 S. C., 540, quoting the exact language used by this Court, at pages 547 and 548 of the case cited. We do not care to comment to any extent upon the act of an agent who has been clothed by its principal with full power to represent its principal in the matter of issuing such policies of insurance, indorsing changes in writing upon such policies, and also waiving certain stipulations orally and not in writing. We must always remember that a policy of insurance is nothing but a contract, for a valuable consideration, to hold the insured harmless from the effect of the fire during a stipulated period of time on a certain piece of property by the insurer. When these contracts are made by *corporations,* they must of necessity act through agents. When agents are clothed with sufficient power by the corporation, they can do anything within the scope of their agency, and thereby bind the principal, who is the insurer. The verdict of the jury was in favor of the plaintiff for $643.16.

But we fear the Circuit Judge was in error when he declined to grant a new trial or a new trial *nisi,* because the jury failed to carry out his direction that the defendant was only entitled to pay to the plaintiff his *"pro rata* share of the plaintiff's policy, as ascertained by taking into consideration all the cumulative insurance." He had charged the jury in the exact language of the General As-

sembly of this State, entitled "An act to regulate the issue of policies by fire insurance companies and associations"—22 Statutes at Large, 113. It was an admitted fact that these policies of insurance were outstanding when fire destroyed the building insured. The amount of insurance and the value of the building were expressed in the policies issued by each of the three companies. There was not a suggestion or question of a mistake in the amount of the actual value or amount of insurance. Both were expressed in the policies. It was the duty of the Circuit Judge to construe this act of the General Assembly as well as contracts for insurance. Its text is as follows: "An act to regulate the issue of policies by fire insurance companies and associations. Section 1. Be it enacted by the General Assembly of the State of South Carolina, That hereafter no fire insurance company, or individuals writing fire insurance policies, doing business in this State, shall issue policies for more than the value to be stated in the policy amount of the value of the property to be insured, the amount of insurance to be fixed by the insurer and insured at or before the time of issuing said policies, and in case of total loss by fire the insured shall be entitled to recover the full amount of insurance and a proportionate amount in case of partial loss: *Provided,* Two or more policies written upon the same property shall be deemed and held contributive insurance; and if the aggregate sum of all such insurance exceed the insurable value of the property as agreed by the insurer and the insured, in the event of total or partial loss, each company shall be liable for its *pro rata* share of said insurance. Section 2. That no statement in the application for insurance shall be held to prevent a recovery before a jury on said policy in case of total or partial loss: *Provided,* After the expiration of sixty days, the insurer shall be estopped to deny the truth of the statement in the application for insurance which was adopted, except for fraud in making the application for insurance. Section 3. Nothing in this act shall be held to apply to insurance on

chattel or personal property. Approved the 28th day of February, A. D. 1896."

By this act insurance companies are limited to writing policies for not more than the value of the property, which value is to be placed in the policy; the amount of insurance *to be fixed by insurer and insured,* with the proviso that if two or more policies be written upon the same property, it shall be deemed and held contributive insurance. "And if the aggregate sum of all such insurance exceed the insurable value of the property, as agreed by the insurer and insured in the event of a total or a partial loss, each company shall be liable for its *pro rata* share of said insurance." Now, in the case at bar, it was agreed in the policy issued to plaintiff that the insurable value of the building insured was $1,000, and this amount was inserted in the policy held by plaintiff. Therefore, under this act, the value of the building, so far as the insurer and insured were concerned, *under the policy here sued upon,* could not be more than $1,000; it was also stipulated by the insurer and insured that not more than $600 could be recovered thereunder. The insurers and insured contracted under this act, and the law made the act a part of their contract, that in the event two or more policies of insurance should be issued upon this building, that in case of the total loss of the building by fire, the loss shall be *pro rated* among the insurance companies which had issued policies upon said building in case the aggregate sum of all such insurance shall exceed the insurable value of the property as agreed by the insurer and the insured. It must be remembered that under this act the insurer is the Home Insurance Co. of New York, the defendant, and the insured is the plaintiff, and that the insurable value of this building *as between them* is $1,000. The defendant had agreed to pay in case of loss $600. The Old Dominion &c. Co. the sum of $500; and the London, Liverpool and Globe $600, thus aggregating $1,700. This sum of $1,700 was in excess of the insurable value ($1,000), as fixed by the insurer and the insured in the very policy sued upon. Under these circum-

stances, does not the case, or contingency, provided for in the act for "contributive insurance" arise? And if so, does not the loss have to be ascertained, so far as the defendant is concerned, by *pro rating* the loss between the three companies, thus: Insurable value under defendant's policy, $1,000; insurance under defendant's policy is $600; insurance under Old Dominion policy is $500; insurance under London, Liverpool and Globe is $600—total insurance, $1,700. But as the insurance is $1,700 and the insurable value is only $1,000, it (the insurable value) cannot pay dollar for dollar, but will be pro rated amongst the three companies thus: Home Insurance Co. must pay the plaintiff 6-17 of $1,000, $254.94-50; Old Dominion Co. must pay the plaintiff 5-17 of $1,000, $294.11; London, Liverpool and Globe must pay the plaintiff 6-17 of $1,000, $352.94-50—$1,000.00.

It may be urged that this would work an injustice to the plaintiff, because he paid the London, Liverpool and Globe Insurance Co. a premium on insurable value of $3,000, with an agreement that all insurance should not exceed $1,700; but in answer the defendant can well say, "I was careful to obey the act of 1896, by fixing the insurable value with the plaintiff at $1,000. No agreement of the insured with another company can interfere with my rights as fixed under my contract, under the act of 1896." Since the jury did not obey the direction of the Circuit Judge, under the act of 1896, as to the method of calculating the amount due as contributive insurance by the defendant, it was an error of law on the Circuit Judge's part not to grant a new trial, or a new trial *nisi*. Let the reporter print the grounds of appeal. To avoid another trial, we will grant a trial *nisi*—that is to say, we will by our judgment order a new trial, unless the plaintiff shall within twenty days after the *remittitur* reaches the Circuit Court release all of his judgment except the sum of $352.94 1-2, with interest thereon from the 15th March, 1898, at seven per cent. per annum.

It is the judgment of this Court, that the judgment of the

Circuit Court be reversed and a new trial had, unless within twenty days after the *remittitur* from this Court shall reach the Circuit Court, the plaintiff shall release all of his judgment except the sum of $352.94 1-2, with interest thereon from the 15th day of March, 1898, at seven per cent. per annum; and in the event the plaintiff shall release under this order, then the judgment of the Circuit Court will be affirmed.