823 F.2d 546
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AETNA CASUALTY & SURETY COMPANY; The Travelers Indemnity
Company, Petitioner-Appellant,
v.
John D. FLOYD; JIMMY D. FLOYD, d/b/a J. & J. Grocery Store,
Defendant-Appellee.
AETNA CASUALTY & SURETY COMPANY; The Travelers Indemnity
Company, Plaintiff-Appellee,
v.
John D. FLOYD; Jimmy D. Floyd, d/b/a J. & J. Grocery Store
No. 2, Defendant-Appellant.
 Nos. 86-3859, 86-3886
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 6, 1987.
Decided July 9, 1987.
 
 D.S.C.
 AFFIRMED AS MODIFIED.
 Appeals from the United States District Court for the District of South Carolina, at Florence. C. Weston Houck, District Judge. (4:84-2570-2; 84-2570)
 Richard Lee Patton (Michael A. McKenzie; McKenzie & McPhail, on brief), for appellants.
 D. Mallory McEachin, Jr.; Zeigler, McEachin & Graham; M. D. Shuler; Wendell O. Brown; Brown & Shuler, on brief), for appellees.
 Before RUSSELL, Circuit Judge, BUTZNER, Senior Circuit Judge, and DAVID B. SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Aetna Casualty and Surety Company and the Travelers Indemnity Company appeal the judgment of the district court finding them liable for the insurance claims of John and Jimmy Floyd stemming from the burning of their business, J & J Grocery No. 2. The Floyds cross-appeal, assigning error to the amount of damages awarded. We affirm except for slight modification of the damages award and the allowance of interest.
 
 
 2
 Fire destroyed the Floyds' grocery store in Mars Bluff, South Carolina, on February 24, 1984. Two separate policies insured the business. In October of 1983 Aetna issued a policy to John Floyd in the name of 'Jimmy D. Floyd and John D. Floyd, d/b/a J & J Grocery.' The same month Jimmy Floyd insured the store and its contents with Travelers in the name of 'J & J Supermarket #2 Jimmy Floyd DBA.'
 
 
 3
 After investigating the fire, Aetna and Travelers brought a declaratory judgment action seeking to avoid liability to the Floyds. The companies claimed that the Floyds intentionally destroyed the store. Aetna and Travelers also claimed that the policies were void due to misrepresentation or concealment of material facts by the Floyds. In addition, Aetna claimed that John Floyd breached the terms of his policy by refusing to answer material questions in his examination under oath.
 
 
 4
 After a three-day trial, a jury found that the Floyds were entitled to recover under the policies. Through special interrogatories, the jury found the following: neither John nor Jimmy had intentionally set the fire nor procured the burning of the store; neither knew about the fire before it occurred; neither intentionally and knowingly misrepresented a material fact in either Aetna's or Travelers' proof of loss; and John Floyd did not fail to truthfully and fully answer questions in his examination under oath by Aetna. The jury determined the amount of loss of the store's contents was $35,015.18.
 
 
 5
 The district court reserved for itself the determination of the amount due the Floyds from each insurance company. It determined that under South Carolina law the two policies were deemed contributive insurance and therefore each company was liable for its pro rata share of the insurance on the building. It also prorated the liability of each insurer for the loss of the store's contents.
 
 
 6
 The insurance companies argue that the district court erred in refusing to admit certain testimony of two of their arson experts. Aetna's expert sought to testify about the results of a laboratory report analyzing debris samples he had gathered at the site on which he relied in determining that the fire was the result of arson. Travelers' expert sought to testify about statements of witnesses concerning where fire was first seen in the store.
 
 
 7
 The trial court excluded both the report and the witness statements as hearsay. The companies argue that the evidence was admissible pursuant to Fed. R. Evid. 703.[1] They contend that their attempt to prove arson was impeded without the disclosure of the contents of the report because they could not show the location of the debris samples that suggested arson.
 
 
 8
 A trial judge has broad discretion regarding admission of evidence. The excluded evidence was hearsay. Rule 703 does not by its terms require that such reports relied on by experts be admitted. Some courts have held that the underlying reports, although otherwise inadmissible, may be admitted solely for the purpose of explaining the basis of the expert's opinion if they are of the type usually relied upon by the expert in drawing his conclusions. See, e.g., Fox v. Taylor Diving and Salvage Co., 694 F.2d 1349, 1356 (5th Cir. 1983); Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1261-62 (9th Cir. 1984). See also S. Saltzburg and K. Redden, Federal Rules of Evidence Manual 671 (4th ed. 1986). Our court has not expressly decided this issue although dictum in United States v. Swaim, 642 F.2d 726, 731 n.2 (4th Cir. 1981), suggests such evidence is admissible.
 
 
 9
 Aetna and Travelers, however, have shown no prejudice from the exclusion of the report. Aetna's expert testified where he found the samples and that a flammable liquid was poured in parts of the building that he identified. He also testified that in his opinion the liquid was intentionally ignited and that the cause of the fire was arson. From his own investigation he identified the liquid as gasoline even before he sent the samples for analysis. Furthermore, he was permitted to testify that he relied in part on the analysis in reaching his conclusion that arson caused the fire.
 
 
 10
 Similarly, there was no prejudice in prohibiting the expert from testifying about statements made to him by people who saw the fire. The same people testified about what they had seen. There is no claim that their testimony was inconsistent with their prior statements to the expert.
 
 
 11
 Aetna and Travelers contend that the district court erred in not granting their motion for a directed verdict on their claim that the Floyds misrepresented material facts in the proofs of loss they submitted to the companies. Each insurance policy contained a false swearing provision[2] under which any deliberate attempted misrepresentation voids the policy.
 
 
 12
 We find no error. A claimant is entitled to a directed verdict only if, examining the evidence in a light most favorable to the party opposing the motion, a reasonable trier of fact could draw only one conclusion. Walker v. Pettit Construction Co., Inc., 605 F.2d 128, 130 (4th Cir. 1979). In this case, the question of misrepresentation in the proofs of loss was disputed.
 
 
 13
 In arguing that the misrepresentation in the proof of loss was uncontroverted fact, Aetna and Travelers point primarily to the testimony of a former clerk at the grocery store. She testified that when Jimmy Floyd called her concerning her statements to insurance investigators, she told him she knew that some items listed on the proof of loss were not actually in the store at the time of the fire. She testified that Jimmy replied that the items were included in order to increase the insurance benefits. The clerk also testified that she had been recently fired and that she didn't know what was in the store at the time it burned. The insurance companies argue that Floyd's statement to the witness constitutes an uncontroverted admission because he did not return to the stand to explicitly deny it.
 
 
 14
 We find that Jimmy Floyd's prior testimony sufficiently contradicted the clerk's statement to raise a question of credibility for the jury. Floyd testified that he believed he had submitted a valid claim. When asked if the submitted proof of loss was a true accounting he called attention to three inaccuracies only. None of the admitted inaccuracies involved adding to the claim things that were not in the store.
 
 
 15
 We find no error in the court's submission to the jury of Aetna's claim that John Floyd's refusal to answer questions in the examinations under oath voided the policy in accordance with the cooperation clause.[3] Although the examination may be searching, an insured is not required to answer questions not material to the loss. Mulkey v. United States Fidelity & Guaranty Co., 243 S.C. 121, 130, 132 S.E.2d 278, 283 (1963), overruled on other grounds, Johnson v. South States Insurance Co., 288 S.C. 239, 341 S.E.2d 793 (1986). John Floyd's statements during the examinations under oath and at trial reflect his belief that the questions he refused to answer were immaterial to the insurance claim. Although the examiner told Floyd several times that refusal to answer could result in voiding the policy, at no time did he explain why the objectionable questions were relevant. A good faith refusal to answer propounded questions on the ground they are immaterial should not result in forfeiture of the insured's rights under the policy. Mulkey, 243 S.Ct. at 130, 132 S.E.2d at 283. Because reasonable minds could differ about whether Floyd cooperated in the examinations under oath, the issue was properly submitted to the jury.
 
 
 16
 The district court did not abuse its discretion in refusing to allow the companies after the close of the evidence to amend their complaint pursuant to Fed. R. Civ. P. 15(b) to add a failure to cooperate claim against Jimmy Floyd. The court found that amendment would unfairly surprise Floyd because the evidence that was the basis for the amendment had been admitted solely in relation to the arson defense and he had not been put on notice to defend a failure of cooperation claim.
 
 
 17
 The insurance companies argue that the district court erred in failing to instruct the jury on their defense of misrepresentation in examinations under oath. They contend that the Floyds intentionally misrepresented material facts in their examinations under oath and that under the false swearing provisions contained in the insurance policies, these misrepresentations void the policies. They requested charges that informed the jury that if the Floyds had sworn falsely or willfully concealed or misrepresented material facts concerning the insurance in their examinations under oath, the Floyds could not recover under the policy.
 
 
 18
 The district court refused to give the requested charges because it determined that the alleged misrepresentations in the examinations under oath either were immaterial or were included in the proof of loss. It sought to avoid confusing the jury with too many instructions.
 
 
 19
 The court fully instructed the jury about concealment and misrepresentation of material facts in the proofs of loss. The court also explained to the jury that the policies provided that any concealment or misrepresentation of a material fact or false swearing would cause the policies to be void. It instructed the jury that Aetna contended that its policy was void because John D. Floyd did not answer questions propounded during his examination under oath truthfully and fully. This issue was submitted to the jury in an interrogatory in which the jury found that the companies failed to prove that John D. Floyd did not answer all questions when he was examined under oath truthfully and fully.
 
 
 20
 In contrast to the complaint's allegations about John D. Floyd's examination under oath, the companies made no allegation concerning Jimmy Floyd's examination under oath. Had the complaint contained such an allegation, no doubt the court would have submitted a similar interrogatory about Jimmy Floyd's examination. Although the court did not give the instruction sought by the companies, its charge was adequate, and its rulings on materiality were not erroneous.
 
 
 21
 The district court entered judgment five months after the verdict. Although 28 U.S.C. Sec. 1961 provides that interest allowed on a money judgment in a civil case shall be calculated from the date of entry of judgment, the district court ordered interest to begin on the date of the verdict. In exceptional cases, interest may be awarded from the date of the verdict where, through no fault of the prevailing party, a significant amount of time has lapsed between the verdict and the entry of judgment. Louisiana & Arkansas Railway Co. v. Pratt, 142 F.2d 847, 849 (5th Cir. 1944); see 11 Wright & Miller, Federal Practice and Procedure Sec. 2785 at 18-19 (1973). The delay in this case, however, does not warrant departing from the provisions of Sec. 1961. Entry of judgment was not a simple, ministerial act. The dispute about the correct computation of damages, which is the subject of the cross-appeal, demonstrates that it was impossible to enter judgment on the verdict until the court resolved the dispute, computed the damages, and allocated liability. For this reason, pursuant to Sec. 1961, interest should run from the date of the entry of judgment.
 
 
 22
 Examination of Aetna's and Travelers' other assignments of error reveals that they lack merit.
 
 
 23
 On cross-appeal, Jimmy and John Floyd contend that the district court erred in its determination of the amount of recovery for the loss of the building. The district court found that under S.C. Code Sec. 38-9-190,[4] the two policies were deemed contributive insurance. Because the aggregate sum of the policies exceeded the stated insurable value under either policy, the court concluded that the companies were each liable for a pro rata share of the insurance. The Aetna policy stated the value of the property at $111,000, and the Travelers policy set the value at $104,000. The court applied the formula set forth in Cave v. Home Insurance Company of New York, 57 S.C. 347, 356-57, 35 S.E. 577, 580 (1900), and determined that Aetna owed the Floyds $57,306.98 and that Travelers owed the Floyds $50,306.98, a total of $107,613.76.
 
 
 24
 Jimmy Floyd claims $104,000, the agreed value of the building stated in the Travelers' policy. He contends Travelers should pay 65% and Aetna 35% of this sum. John D. Floyd claims $55,500, one half of the agreed value stated in the Aetna policy. Their claims total $159,500.
 
 
 25
 The companies in response to the cross-appeal submit that if they are liable, John Floyd is entitled to $55,500 from Aetna and that Jimmy Floyd is entitled to $53,806.97, of which Travelers should pay $25,153.49 and Aetna $28,653.48. The aggregate payment is $109,306.97.
 
 
 26
 We cannot accept the Floyds' contention that they are entitled in the aggregate to $159,500, a sum that substantially exceeds the agreed values stated in the policies. The flaw in their reasoning is Jimmy Floyd's insistence on recovering the full face amount of the Travelers' policy. This policy named the insured 'J & J Supermarket #2 Jimmy Floyd DBA.' The evidence disclosed that Jimmy Floyd doing business as J & J Supermarket #2 had a one-half interest in the market. Therefore, his insurable interest under the policy is limited to one-half the stated value of the building. See 4 J. Appleman, Insurance Law & Practice Sec. 2144 at 67 (1967). The insurance companies correctly recognized this interest in their computation.
 
 
 27
 The district court properly held that the policies exceeded the value of the building and that they should be prorated. It did not have, however, the benefit of the computation and allocation that the companies submitted in response to the cross-appeal. Although no South Carolina case precisely on point has been called to our attention, we accept the companies' submission, which is slightly in excess of the district court's total.
 
 
 28
 The judgment is vacated, and the case is remanded. On remand the district court should modify its judgment to conform to the companies' computation. Interest should run from April 21, 1986, the date of the entry of the court's judgment. In all other respects the judgment is affirmed. The Floyds shall recover their costs on appeal.
 
 
 
 [1]
 Rule 703 provides:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
 
 
 [2]
 The policies contained identical false swearing provisions, which stated:
 This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.
 
 
 [3]
 That clause provides, in part: 'The insured, as often as may be reasonably required, shall . . . submit to examinations under oath by any person named by this Company . . .'
 
 
 [4]
 Section 38-9-190 provides in part:
 In case of total loss by fire the insured shall be entitled to recover the full amount of insurance, and in case of a partial loss the insured shall be entitled to recover the actual amount of the loss, but in no event more than the amount of the insurance stated in the contract. But if two or more policies are written upon the same property, they shall be deemed and held to be contributive insurance, and if the aggregate sum of all such insurance exceeds the insurable value of the property, as agreed by the insurer and the insured, each company shall, in the event of a total or partial loss, be liable for its pro rata share of insurance.