**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael H. CASSIDY,**
**Defendant-Appellant.**

**No. 76–1805.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 14, 1977.

Decided March 3, 1978.

Cathlin Donnell, U. S. Atty., Denver, Colo. (Interim), for plaintiff-appellee.

James C. Vaughters, Denver, Colo. (Hunter & Heery, P. C., Denver, Colo., on brief), for defendant-appellant.

Before SETH, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

Michael H. Cassidy, an inmate in the Federal Correctional Institute in Englewood, Colorado, tried to shoot his way out of the institution. The escape effort proved abortive and Cassidy, along with three others, was later charged in a six count indictment as follows: Count 1, unlawfully seizing and holding Raymond Trujillo, an officer at the Institute, in violation of 18 U.S.C. § 1201(a)(2); Count 2, unlawfully seizing and holding Mary Ann Wallace, a visitor to the Institute, in violation of 18 U.S.C. § 1201(a)(2); Count 3, assaulting one Jerome Goughan, an employee at the Institute, in violation of 18 U.S.C. § 111; and Counts 4, 5 and 6, unlawfully conveying into a federal penal institution three firearms (each firearm was the basis for a separate count) in violation of 18 U.S.C. § 1792. Upon trial, Cassidy was convicted by a jury on all counts. Cassidy now appeals. Finding no reversible error, we affirm.

Cassidy, an inmate in the Federal Correctional Institute in Englewood, decided to escape. He prevailed upon his girl friend to smuggle three guns into the Institute. Once armed with a gun, Cassidy held Trujillo and Wallace as hostages. During the ensuing siege Cassidy fired repeatedly at the control room where Goughan, an employee at the institution, was stationed. As indicated, the escape attempt proved fruitless, and Cassidy, some 10 hours later, gave up.

On appeal, Cassidy raises ten grounds for reversal, three of which merit some comment. As his first ground for reversal, Cassidy argues that 18 U.S.C. § 1201(a)(2), upon which the first two counts were based, is unconstitutionally vague and overbroad.

18 U.S.C. § 1201(a)(2) provides that whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away and holds for ransom, reward, or otherwise, any person, when any such act against the person is done within the special maritime and territorial jurisdiction of the United States, shall be punished by imprisonment for any term of years or for life. Counts 1 and 2 were couched in language which parallels the statute. For example, Count 1 alleges that "Michael H. Cassidy . . . did unlawfully seize and confine one Raymond Danny Trujillo, and the said Raymond Danny Trujillo was held by said defendants for the purpose of aiding in the escape of Michael H. Cassidy . . ."

■■■ We think Counts 1 and 2 fully apprised Cassidy of the crime sought to be charged, and we fail to perceive any vagueness or overbreadth in the statute itself. We are not here concerned with common law kidnapping which may, or may not, have required some degree of asportation. The statute is designed to include much more than kidnapping for ransom, for example. *United States v. Young,* 512 F.2d 321 (4th Cir. 1975), *cert. denied,* 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976). It includes confining, holding, or seizing a person for ransom, reward "or otherwise." In *Gooch v. United States,* 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522 (1936), the Supreme Court interpreted the phrase "ransom or reward or otherwise" to encompass any benefit which a captor might attempt to receive for himself. This Circuit has held that holding and seizing a person for the purpose of effecting an escape from a penal institution constitutes a violation of 18 U.S.C. § 1201. *United States v. Walker,* 524 F.2d 1125 (10th Cir. 1975). While Cassidy at spasmodic moments in the ten-hour siege may have expressed hope that Trujillo and Wallace would not be harmed, the fact remains that Cassidy "seized" both Trujillo and Wallance with the hope that they could be used to his advantage in his escape effort. For example, Trujillo testified that at gunpoint Cassidy ordered him to go to a certain cell and release Cassidy's friend, Alfred Rollins. In short, 18 U.S.C.

§ 1201(a)(2) is not unconstitutionally vague; Counts 1 and 2 set forth a violation thereof; and the evidence adduced at trial showed a violation of its provisions.

As indicated, one essential element of Counts 1 and 2 was that the acts complained of occurred within the "special maritime and territorial jurisdiction of the United States." Counsel asserts here, as he did in the trial court, that the Government failed to establish, even *prima facie,* that the Federal Correctional Institute in Englewood, Colorado was within the special territorial jurisdiction of the United States. In this regard the Government's evidence established the following: (1) That in 1938 the United States purchased a piece of land in Jefferson County, Colorado; (2) that the Federal Correctional Institute is located on the land acquired by the United States in 1938 from Jefferson County, Colorado; (3) that the charged offenses occurred in the Federal Correctional Institute; and (4) that the State of Colorado consented to the acquisition of lands by the United States and ceded exclusive jurisdiction over land so acquired by the United States.

■■■ It is Cassidy's position that the Government failed to offer any evidence which would show that the United States *accepted* jurisdiction over the land on which the Federal Correctional Institute is situate. It is true that in 1940 Congress enacted legislation which provided that unless and until the United States has by affirmative action accepted jurisdiction over lands *hereinafter* acquired by the United States, it was to be conclusively presumed that no such jurisdiction has been accepted. However, the land here involved was acquired by the United States in 1938. Prior to the 1940 amendment, acceptance of jurisdiction over lands acquired by the United States was presumed in the absence of evidence to the contrary. *Atkinson v. Tax Commission,* 303 U.S. 20, 23, 58 S.Ct. 419, 82 L.Ed. 621 (1938) and *Silas Mason Co. v. Tax Commission,* 302 U.S. 186, 207, 58 S.Ct. 233, 82 L.Ed. 187 (1937). As to lands acquired by the United States *after* 1940, it has been held that the United States does not acquire jurisdiction over lands acquired by it unless it gives notice of acceptance. *Adams v.*

*United States,* 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943). See also *People v. Sullivan,* 151 Colo. 434, 378 P.2d 633 (1963). However, the courts have consistently held that for land acquired by the United States *prior* to 1940, the presumption that jurisdiction was accepted remains. *United States v. Johnson,* 426 F.2d 1112, 1114 (7th Cir.), *cert. denied,* 400 U.S. 842, 91 S.Ct. 86, 27 L.Ed.2d 78 (1970) and *Markham v. United States,* 215 F.2d 56 (4th Cir. 1954), *cert. denied,* 348 U.S. 939, 75 S.Ct. 360, 99 L.Ed. 735 (1955).

In the instant case the question of whether the Government proved that the crimes charged occurred in the special territorial jurisdiction of the United States was submitted to the jury under what we deem were adequate instructions. The jury was advised of the presumption above mentioned, but were further advised that they were not "required to presume." By its verdict the jury found, in effect, that the crimes charged did in fact occur on land which was a part of the special territorial jurisdiction of the United States and that the United States had accepted jurisdiction. The record below supports such finding.

Particular objection is made by Cassidy to the ruling of the trial court that Dr. Donald J. Egan, a psychiatrist, could be called by the Government as a rebuttal witness and give his opinion as to Cassidy's mental condition on the date of the offense. Prior to trial, Cassidy filed a motion for a determination of mental competency under 18 U.S.C. § 4244. That statute provides, *inter alia,* that no statement made by an accused during the course of his examination shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding.

Dr. Egan made his examination under a court order issued pursuant to 18 U.S.C. § 4244 and reported back to the court that Cassidy was competent to stand trial. On the basis of such report, the matter proceeded to trial. At trial, the only real issue was Cassidy's sanity, or lack of it. In its case-in-chief, the Government offered only lay testimony bearing on that issue. By way of defense, Cassidy offered both lay and expert testimony which was designed to show insanity. Then, on rebuttal, the Government offered several expert witnesses, one of whom was Dr. Egan.

It is a bit difficult from the record to ascertain the precise objection made to the calling of Dr. Egan as a rebuttal witness. It would appear that one aspect of the objection was that inasmuch as Dr. Egan had examined Cassidy for the purpose of determining his competency to stand trial, he was somehow not qualified to testify concerning Cassidy's sanity on the date of the offense. In this regard, however, Dr. Egan Testified that he used the identical testing procedures to determine both competency to stand trial and insanity on the date of the offense charged. In any event, Dr. Egan, in our view, was properly qualified to be allowed to express his opinion as to Cassidy's sanity.

It appears also that a further objection to allowing Dr. Egan to testify was the prohibition contained in 18 U.S.C. § 4244 and above referred to. That prohibition precludes a psychiatrist who has conducted a 4244 examination from testifying at a trial on the issue of guilt concerning statements made to the psychiatrist during the course of his mental examination. In the instant case Dr. Egan in his direct examination was not asked to relate any statement made to him by Cassidy during the course of the latter's examination, although he did express his opinion as to Cassidy's sanity on the date of the offense. In cross-examination defense counsel elected to bring out statements made by Cassidy to Dr. Egan. Congress could have forbade a psychiatrist who conducts a 4244 examination from testifying at all in any trial on the merits. But it did not, and chose to frame the limitation in terms only of statements made by the accused. Here, Dr. Egan on direct examination did not testify as to any statement made to him by Cassidy. Accordingly, we find no violation of the provisions of 4244. See *United States v. Malcolm,* 475 F.2d 420 (9th Cir. 1973).

The other grounds for reversal set forth in Cassidy's brief have been considered, and do not warrant reversal. No extended com-

ment is necessary in connection with these matters. Denial of Cassidy's motion to suppress was in a sense forecast by our opinion in an earlier appeal from an earlier order of the trial court which granted the same motion to suppress. See our unpublished opinion, *United States v. Cassidy,* No. 76–1137, decided March 30, 1976.

The transcript of the impaneling of the jury does not disclose any error. Counsel asserts in this regard that the trial court "refused" to *voir dire* the jury relative to Cassidy's Indian ancestry and the defense of insanity. We find no such "refusal." Counsel did submit a list of proposed questions, which included some relating to Indians and the defense of insanity. The Government in its brief suggests that these questions were in fact filed after the jury had been sworn. Be that as it may, the matter was apparently not pursued during the impaneling process. A trial court has broad discretion as to questions to be asked of jurors on *voir dire.* There was no abuse of that discretion here. *Lowther v. United States,* 455 F.2d 657, 666 (10th Cir.), *cert. denied,* 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972).

Judgment affirmed.