UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael Anthony MADRID,
Defendant-Appellant.

No. 80–1693.

United States Court of Appeals,
Tenth Circuit.

March 15, 1982.

---

Thomas S. Udall, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., Albuquerque, N. M., was also on the brief), for plaintiff-appellee.

William W. Deaton, U. S. Public Defender, Albuquerque, N. M. (Tova Indritz, Asst. Public Defender, Albuquerque, N. M., was also on the brief), for defendant-appellant.

Before HOLLOWAY and McWILLIAMS, Circuit Judges, and BOHANON, District Judge.[*]

[*] Honorable Luther Bohanon of the Northern, Eastern, and Western Districts of Oklahoma, sitting by designation.

HOLLOWAY, Circuit Judge.

Defendant Michael Anthony Madrid appeals from his convictions by a jury on two counts in connection with a bank robbery and from his 10-year sentence on the verdict. See note 5, *infra.* On appeal, Madrid asserts principally three claims of error: (1) the admission of statements he made to a psychiatrist examining him as to competence to stand trial, which ruling was allegedly contrary to 18 U.S.C. § 4244 and violative of defendant's Fifth Amendment privilege against self-incrimination; (2) the admission of prejudicial statements he made to the psychiatrist as to past crimes and heroin addiction, said to be violative of Fed.R.Evid. 403 and 404(b); and (3) the denial of a judgment of acquittal, in light of the evidence of his incompetence at the time of the offenses and the failure of the Government to prove his competence at that time beyond a reasonable doubt.

## I

### *The factual background*

On March 21, 1979, Madrid and an accomplice, Michael Luna,[1] attempted to rob the American Bank of Commerce in Albuquerque, New Mexico. Madrid was a regular customer at the bank. On the morning of the robbery before the bank opened Rosemary Romero, a teller, was driven to work by her father, accompanied by two young nephews. She took the children into the bank to get some candy and then returned to the car with them. As she was putting the children back in the car she felt something heavy on her back and a man (Madrid) told her to put the children in the car right away. A second man (Luna), armed with a gun, got into the car with Romero's father and nephews while Madrid led her into the bank and tied her to a chair. When Holly Bostick, the branch manager, arrived she was ordered to open the night vault. She did so and helped Madrid stuff money into a knapsack.

Two policemen arrived in time to see a robber running out of the bank with a gun

1. Luna was tried separately and convicted.

in hand. (II R. 66). The robber had dropped the knapsack with the money inside the bank as he ran out. The officers gave chase. The robber pointed a gun at one of the officers but did not fire it. (II R. 67, 74, 78–80). The officers eventually apprehended the robber, who was identified as defendant Madrid. Madrid's gun contained seven rounds in the clip, but there was no shell or cartridge in the chamber.

## II

### The pre-trial proceedings

On the day following his arrest Madrid was ordered to be confined at the Bernalillo County Mental Health facility. On April 4, 1979, on defense counsel's motion, pursuant to 18 U.S.C. § 4244 the court ordered that defendant be examined by Dr. Robert Buie to determine his competency to stand trial. Dr. Buie reported that he was not competent, and the court ordered commitment for thirty days to the San Diego Metropolitan Corrections Center; this commitment was then extended another thirty days, after which Madrid was returned to the Bernalillo County facility.

On July 12, 1979, after receiving a report from Dr. Bailey, who examined Madrid in San Diego, the court found that Madrid was incompetent to stand trial. Pursuant to state court commitment proceedings Madrid was committed to the New Mexico State Hospital where he remained until February 4, 1980. On the Government's motion for further examination as to Madrid's competency to stand trial pursuant to 18 U.S.C. § 4244, (I R. 13), the court on March 17, 1980, ordered that Dr. G. Michael Dempsey, a psychiatrist, examine him. (I R. 14). Dr. Dempsey's report indicated that Madrid was competent to stand trial. (I R. 16, p. 4). Although the examination was ordered solely to determine competency to stand trial, the report expressed the further opinion that Madrid was sane at the time of the offense. (*Ibid.*). In support of this conclusion Dr. Dempsey's report cited statements

by defendant that he had committed previous armed robberies in order to support a heroin habit.

After a hearing on March 24, 1980, the court found Madrid competent to stand trial. (I R. 17). That same day Madrid's counsel gave notice as required by Fed.R. Crim.P. 12.2(a) of his intention to raise the defense of insanity. On April 17 the Government filed a "Motion to Compel Examination," specifically requesting further examination by Dr. Dempsey to determine sanity at the time of the offense pursuant to Fed.R.Crim.P. 12.2(c). The motion stated in part (I R. 19):

1. Defendant Madrid has given the government notice that it intends to rely on a defense of insanity.

2. Dr. Dempsey has examined the defendant on the issue of competence, but needs a further examination to determine sanity at the time of the offense.

3. Rule 12.2(c) provides that the Court, upon the motion of the attorney for the government, may order the defendant to submit to a psychiatric examination by a psychiatrist designated for this purpose.

4. Counsel for the defendant does not oppose this motion.

The motion was granted that day and Dr. Dempsey examined the defendant again on April 30.

## III

### The proceedings at trial

At trial the Government in its case-in-chief established the elements of the offenses. The defense case consisted solely of evidence as to Madrid's mental state. Three psychiatrists and a clinical psychologist testified that he suffered from schizophrenia and depression and was legally insane at the time of the offense, because he was incapable of conforming his conduct to the requirements of the law.[2] (III R. 177, 202, 233, 259–60). An additional psychologist indicated that he was unable to state an opinion due to the lapse of time between

---

**2.** A defendant is entitled to acquittal by reason of insanity if, at the time of the offense, "as a result of mental disease or defect, he lacked

substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." *Wion*

the offense and his examination of defendant. (II R. 124–25). In addition, a social worker and Madrid's mother testified as to his behavior and apparent mental condition. (II R. 142–43, 145–53). The defense experts expressed the opinion that defendant carried out the robbery with the wish that he would be killed. (III R. 181, 183, 208, 253, 260, 262).

The prosecution then presented rebuttal evidence on the issue of insanity. Luna, Madrid's accomplice, testified that they had first discussed the idea of robbing a bank about a month before the offense. (III R. 269). They planned the details of the robbery the night before. (III R. 270). Luna testified that Madrid's behavior was not unusual. (III R. 272–73, 274). The two bank employees who were present at the time of the robbery also testified that Madrid acted normally. (III R. 282–84, 286–88).

The prosecution then called Dr. Dempsey. He testified that in his opinion Madrid suffered from major depression, in the upper 25% of severity. (III R. 299). However, he further stated that at the time of the offense Madrid was able to know what he was doing and that he could conform his conduct to the requirements of the law. (III R. 300). Over the objection of defense

counsel, he stated that an important basis for his opinion was Madrid's statements to him in his initial interview that he had committed armed robberies of stores prior to the offense in question in order to support a heroin addiction.[3] (III R. 302). Dr. Dempsey stated that this indicated "a past history of antisocial behavior, in particular, robbery for profit rather than robbery for some bizarre motive like committing suicide." (III R. 302–03). In his charge to the jury, the trial judge stated that this testimony was admitted solely as a basis for Dr. Dempsey's opinion.[4] The jury returned verdicts of guilty on both of the two counts of the indictment.[5] On the verdict, one sentence of ten years' imprisonment was imposed, the defendant to become eligible for parole under 18 U.S.C. § 4205(b)(2) at such time as the Parole Commission should determine.

We turn to defendant's appellate contentions.

## IV

### The claim of violation of § 4244 and the Fifth Amendment privilege against self-incrimination

Defendant argues that Dr. Dempsey's testimony as to past crimes and heroin ad-

---

v. *United States*, 325 F.2d 420, 430 (10th Cir.) (en banc), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309.

The Government bears the burden of proof of competency at the time of the offense, beyond a reasonable doubt, when evidence of insanity is produced from whatever source. *Fitts v. United States*, 284 F.2d 108, 112 (10th Cir.). The test is whether there is sufficient evidence establishing that:

... at the time the accused committed the unlawful act, he was mentally capable of knowing what he was doing, was mentally capable of knowing that it was wrong, and was mentally capable of controlling his conduct.

*Wion v. United States, supra*, 325 F.2d at 430.

3. There was no evidence that Madrid was still addicted to heroin at the time of the attempted bank robbery in question here.

4. The cautionary instruction was as follows:

Now, the defendant is not on trial before you for any act or conduct not charged in the indictment, specifically any evidence as to the possible use by the defendant of heroin or

possible commission of other crimes was admitted solely for the reason that one of the experts utilized those claimed facts as a portion of the basis of his opinion as to the mental competency of the defendant at the time of the offense alleged in the indictment.

I have instructed you as to opinions by experts and that they may state their reasons for such opinions. *You are not to consider such evidence for any other purpose that [sic] in evaluating the expert testimony.*

(IV R. 367). (Emphasis added).

5. The indictment was returned in two counts. Count I alleged that Madrid and Luna had, by force and violence, attempted to take and taken from Bostick and Romero, the bank employees, approximately $5651 and had assaulted them and put their lives in danger, in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2. Count II charged that Madrid and Luna had assaulted and put in jeopardy the persons of Ms. Romero's father and the two children in connection with the bank robbery, in violation of 18 U.S.C. § 2113(d) and 18 U.S.C. § 2.

diction should have been excluded because it was derived from statements made by Madrid during the initial interview conducted pursuant to 18 U.S.C. § 4244. That statute provides in pertinent part:

No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding.

In *United States v. Alvarez*, 519 F.2d 1036 (3rd Cir.), a psychiatrist examined the defendant pursuant to § 4244 solely to determine his competency to stand trial. The court held that the statutory ban on use of defendant's statements on "the issue of guilt" bars their use not only to prove defendant's participation in the crime but also to prove sanity, which is an element of legal guilt. *Id.* at 1042; *accord, United States v. Malcolm*, 475 F.2d 420, 426–27 (9th Cir.).[6] *But see United States v. Bennett*, 460 F.2d 872, 878–79 & n.23 (D.C.Cir.) (issue of sanity not necessarily within "issue of guilt"). We have held that, if the defendant's mental responsibility for the offense has in any way been put in issue, and if the judge has determined that the legal presumption of criminal responsibility has been dissipated,

"criminal responsibility becomes an essential element of the offense to be proved beyond a reasonable doubt." *Wolcott v. United States*, 407 F.2d 1149, 1150 (10th Cir.) (*en banc*), cert. denied, 396 U.S. 879, 90 S.Ct. 156, 24 L.Ed.2d 137.

■ As was the case in *Alvarez*, the initial examination here by Dr. Dempsey was ordered solely for the purpose of ascertaining defendant's competence to stand trial. However, without expressing any view on the holding in *Alvarez*,[7] we are convinced that other facts make this appeal clearly distinguishable from *Alvarez*. Here Dr. Dempsey's second examination was ordered pursuant to Fed.R.Crim.P. 12.2(c) and directed to the issue of sanity at the time of the offense.[8] As noted, this followed defendant's giving notice of his intention to rely on the defense of insanity. Damaging statements as to Madrid's past crimes and heroin addiction had been made in the course of the initial § 4244 examination. Defense counsel, knowing from Dr. Dempsey's report that Madrid had made these statements in the first interview and that Dr. Dempsey had already expressed an opinion as to Madrid's sanity at the time of the offense, did not oppose the second examination by Dr. Dempsey on the issue of sanity at the time of the offense.[9] At that

---

**6.** This broad interpretation of the statute is supported by its legislative history. The House Report noted that:

The accused's rights are protected by the added provision that his (or her) statements at such hearing shall not be admitted in evidence at any subsequent criminal proceeding. H.Rep.No.1309, 81st Cong., 1st Sess. 1949, *reprinted in* 1949 U.S.Code Cong.Serv. 1928, 1928.

**7.** The question in *Alvarez* was not addressed by us in *United States v. Cassidy*, 571 F.2d 534 (10th Cir.), cert. denied, 436 U.S. 951, 98 S.Ct. 2859, 56 L.Ed.2d 793. In *Cassidy*, a psychiatrist who had examined the defendant pursuant to § 4244 was permitted to express his opinion on the defendant's sanity at the time of the offense. *Id.* at 537. However, the objection was to allowing the psychiatrist to testify at all. On direct examination for the prosecution the psychiatrist did not testify concerning any statements made to him by the defendant; they were brought on cross examination by defense counsel.

**8.** Rule 12.2(c) provides:

*Psychiatric Examination.* In an appropriate case the court may, upon motion of the attorney for the government, order the defendant to submit to a psychiatric examination by a psychiatrist designated for this purpose in the order of the court. No statement made by the accused in the course of any examination provided for by this rule, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding.

**9.** Dr. Dempsey's March 18, 1980, report to the court on defendant's competence to stand trial bears a notation that it was read by the Assistant United States Attorney and defense counsel respectively on March 20 and 21. It was stipulated by both sides at a March 24, 1980, hearing on defendant's competency to stand trial that if called Dr. Dempsey would testify as set out in his report. (II R. 10–11).

point it could reasonably have been expected that Dr. Dempsey's opinions as to sanity at the time of the offense would be based on both interviews. It would be unrealistic to assume he could compartmentalize his analysis and block out information from the prior examination. And the psychiatrist could not reasonably have been expected to repeat all the same questions asked in the first interview to obtain the same information all over again in the second interview, without some warning that this was necessary.

We need not decide whether a defendant, by giving notice of an insanity defense under Rule 12.2 and offering testimony thereon, waives his right under § 4244 to object to admission of statements made during prior § 4244 examinations. We are mindful that the prohibition against the use of statements made in a § 4244 examination applies "whether the examination shall be with or without the consent of the accused," the same wording appearing in both § 4244 and Rule 12.2(c). Nevertheless, we conclude that in these circumstances, by consenting without qualification to the Rule 12.2(c) examination by Dr. Dempsey, who would obviously be the Government's expert on defendant's sanity, the defendant waived the objection under § 4244 to admission of his statements which were elicited in the earlier § 4244 examination, which bear on the issue of sanity at the time of the offense, and which were a basis for Dr. Dempsey's opinion.[10]

This conclusion as to waiver of objections under § 4244 does not deprive the defendant of all protections, and he retains those afforded by Rule 12.2(c). We now consider the bar within Fed.R.Crim.P. 12.2(c) itself against the admission of statements made by a defendant "on the issue of guilt" during an examination ordered under Rule 12.-2(c), after a defendant has given notice of an insanity defense, as defendant did here.[11]

The language of § 4244 interpreted by *Alvarez* is the same as that in a portion of Rule 12.2(c). Nevertheless, statements made during a Rule 12.2(c) examination must be admissible on the issue of sanity or the very purpose of the Rule would be frustrated. *United States v. Leonard*, 609 F.2d 1163, 1165–66 (5th Cir.), discusses the wording and the legislative history of Rule 12.2(c) which demonstrate that statements made by the defendant in an examination conducted pursuant to the Rule, though not admissible on the issue of participation in the offense, are to be admissible on the issue of sanity at the time of the offense. The conference committee report stated:

> The rule does not preclude use of statements made by a defendant during a court-ordered psychiatric examination. The statements may be relevant to the issue of defendant's sanity and admissible on that issue. However, a limiting instruction would not satisfy the rule if a statement is so prejudicial that a limiting instruction would be ineffective. Cf. practice under 18 U.S.C. § 4244.

H.Conf.Rep.No.94–414, 94th Cong., 1st Sess. 1975, p. 10, *reprinted in* 1975 U.S.Code Cong. & Ad.News 713, 715.[12]

The admission of defendant's statements as a basis for an expert's opinion on the issue of sanity is consistent with the practice followed prior to enactment of Rule 12.2(c). In *United States v. Julian*, 469 F.2d

---

**10.** The statute's protection against admission of defendant's statements may be waived by the defendant. *E.g., United States v. Smith*, 404 F.2d 720, 728 (6th Cir.); *Bailey v. United States*, 248 F.2d 558, 560 (D.C.Cir.), *cert. denied*, 355 U.S. 919, 78 S.Ct. 351, 2 L.Ed.2d 279.

**11.** The pertinent portion of the prohibition in Rule 12.2(c) which contains the same language as § 4244 states:

> No statement made by the accused in the course of any examination provided for by this rule, whether the examination shall be with or without the consent of the accused,

shall be admitted in evidence against the accused on the· issue of guilt in any criminal proceeding.

**12.** It has been remarked that the legislative history indicates that the language used in the Rule "means something rather different from what it would ordinarily be understood to say." 1 Wright & Elliott, *Federal Practice & Procedure* § 209, 1980 Supp., p. 200. The reference in the report to the practice under § 4244 is also puzzling in light of cases such as *Alvarez* and *Malcolm*, both of which antedate the report.

371 (10th Cir.), this court upheld the ordering of a dual purpose examination, relating to competency to stand trial pursuant to § 4244 and to sanity at the time of the offense. We held that the expert could testify as to defendant's statements bearing on the issue of sanity; "when the defendant has raised the issue of insanity and the psychiatrist is called to testify on this question, the defendant must not be allowed to muzzle him at his option." 469 F.2d at 376.

Thus the statements made by the defendant during the Rule 12.2(c) examination were admissible at trial as a basis for the expert's opinion on the issue of sanity. Furthermore, since the defendant consented to the Rule 12.2(c) examination by Dr. Dempsey, we are persuaded that the statements of the defendant during both examinations by the same doctor are admissible on the issue of sanity and that defendant waived any objection to admission of the statements on the ground that they were elicited during the earlier § 4244 examination. We believe it would be unfair to the Government, after the defendant consented to the second examination by Dr. Dempsey, to uphold the defendant's later objection to use of any of the statements from the first examination, since the defendant made no objection and gave no notice that such a limitation would be sought as to his testimony. We thus cannot uphold the defendant's objections under § 4244 to the admission of his statements made in the first examination.

Along with his arguments under § 4244, defendant has also asserted a constitutional claim, grounded on the Fifth Amendment privilege against self-incrimination, as a basis of objection to Dr. Dempsey's testimony. Further, defendant's counsel did by a post-argument letter bring *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359, to our attention, stating he would like to have the case furnished to the panel. We therefore will also address the Fifth Amendment claim.

■ *Estelle v. Smith* does uphold Fifth Amendment objections to the admission in a sentencing proceeding of statements of a defendant where they were obtained during a pretrial examination to determine competence to stand trial in a state court, and where no warning of his right to remain silent and of possible use of his statements against him was given. We feel the case is clearly distinguishable.

The opinion in *Estelle v. Smith* emphasized the fact that it involved a criminal defendant who had neither initiated a psychiatric evaluation nor attempted to introduce any psychiatric evidence. 451 U.S. at 468, 101 S.Ct. at 1875–76. Here the reverse is true, and we conclude that such a constitutional objection lacks merit. Defendant Madrid gave notice of his insanity defense before the second examination by Dr. Dempsey and presented substantial evidence by three psychiatrists, two psychologists, the social worker, and his mother to establish lack of competence at the time of the offenses. In such circumstances examination by a psychiatrist may be ordered and he may testify against the defendant concerning the competency issue without violation of the Fifth Amendment privilege. *United States v. Leonard*, 609 F.2d 1163, 1165 n.3 (5th Cir.); *United States v. Cohen*, 530 F.2d 43, 47–48 (5th Cir.), *cert. denied*, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130; *Karstetter v. Cardwell*, 526 F.2d 1144, 1145 (9th Cir.); *United States v. Trapnell*, 495 F.2d 22, 24 (2d Cir.); *United States v. Bohle*, 445 F.2d 54, 66–67 (7th Cir.) (overruled on other grounds in *United States v. Lawson*, 653 F.2d 299, 303 n.12); *United States v. Steinberg*, 428 F.Supp. 77, 78 (D.Conn.). *See Estelle v. Smith, supra*, 451 U.S. at 465–66, 101 S.Ct. at 1874–75; *United States v. Julian*, 469 F.2d 371, 375–76 (10th Cir.) (recognizing the trial court's power, when insanity is raised, to order a psychiatric examination as to competency to stand trial and as to responsibility for the acts charged, without discussion of the Fifth Amendment). Hence we cannot uphold the claim of constitutional error.

## V

*The admissibility of evidence of past crimes under Federal Rules of Evidence 403 and 404(b)*

■ Defendant also contends that, especially since the only issue at trial was de-

fendant's sanity, the testimony as to past crimes should have been excluded under Federal Rules of Evidence 403 and 404(b). Rule 404(b) provides as follows:

> *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Admissibility of past crimes evidence is also subject to the provision of Rule 403 that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

In *United States v. Bell*, 500 F.2d 1287, 1289–90 (2d Cir.), the court held that it was not reversible error to permit a psychiatrist to testify as to defendant's antisocial activity, some of which was criminal, when the activity was part of the basis for the expert's opinion.[13] Similarly, here Dr. Dempsey stated that Madrid's prior robberies to support a heroin addiction were an "important part" of the basis for his opinion. (III R. 302).[14] This part of the Doctor's testimony was thus probative on the issue of sanity and admissible under Rule 404(b).

There remains the question of balancing the probative value against the prejudicial effect of the evidence. The probative value of the past crimes evidence is diminished by the fact that there was no proof of addic-

tion to heroin or its use at the time of the robbery. Further, Dr. Dempsey testified on voir dire that his opinion would have been the same, though less forceful, even if defendant did not have a history of drug addiction and robberies (III R. 292–93), thus weakening the argument for probative value of the statements. And the prejudicial effect of the admission of the statements was increased because they introduced both drug addiction and other crimes. *See United States v. Johnson*, 495 F.2d 242, 245 (10th Cir.).

██ Nevertheless, the determination under Rule 403 "is properly within the trial judge's discretion." *United States v. Nolan*, 551 F.2d 266, 271 (10th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191. We cannot say that it was error to admit the evidence, considering the fact that Dr. Dempsey did state that Madrid's past robberies were an important part of the basis for his opinion. And the judge made it clear in his charge to the jury that the evidence was to be considered only as a basis for Dr. Dempsey's opinion.[15] For these reasons we find no error and no violation of Rules 403 and 404(b) in the admission of the evidence.

## VI

### *The sufficiency of the evidence*

Finally, Madrid argues that the trial court should have directed a judgment of acquittal because of failure of the Government to establish beyond a reasonable

---

**13.** Evidence of past crimes has also been admitted, even though not related to a psychiatrist's opinion, where it bears on the issue of sanity by tending to show that defendant was a "well organized, goal directed individual; that his acts . . . indicated no lack of coordination or reasoning, nor acts of a person acting out of impulse, but clearly indicated that he was acting according to design or plan, wholly consistent with the acts of a sane person and equally inconsistent with one afflicted with a mental disease." *United States v. Davis*, 513 F.2d 319, 321 (5th Cir.), *cert. denied* 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 329.

**14.** We note that one of the defense experts mentioned defendant's use of drugs in respond-

ing to a defense question about his opinion. (III R. 204). This same expert volunteered on cross-examination that a "diehard bank robber" might have planned a robbery similar to the one at issue here. (III R. 213).

**15.** *See* note 4, *supra.* It would have been preferable had there also been a cautionary instruction at the time the evidence was admitted. None was requested at that time, however, and the failure to give one was not plain error, especially since an instruction was given in the charge. *Cf. United States v. Bridwell*, 583 F.2d 1135, 1140 (10th Cir.) (evidence of other crimes to show motive, intent, knowledge, and plan).

doubt the essential element of competence at the time of the offenses. Defendant does not contest on appeal the sufficiency of the evidence that an attempted bank robbery and assault occurred. (Appellant's Brief in Chief at 6).

■ Once the presumption of sanity was dissipated, as it clearly was by the substantial evidence for the defense, the prosecution had the burden of proving competence at the time of the offenses beyond a reasonable doubt. *United States v. Munz*, 542 F.2d 1382, 1389 (10th Cir.), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 555; *Wolcott v. United States, supra*, 407 F.2d at 1150. On this critical issue it is true that four of the five experts who expressed opinions on the issue of sanity concluded that Madrid was not capable of conforming his conduct to the requirements of the law at the time of the robbery. The defense experts examined defendant numerous times over different periods of several months. (III R. 172, 252). Moreover, Dr. Dempsey's first examination of Madrid did not occur until he had been institutionalized and treated for about one year after the robbery, and his second examination was over 13 months after the offense. (III R. 309–10). Furthermore, where lay witnesses have only a limited opportunity to observe the defendant and to form opinions on his sanity, we have held that their testimony, standing alone, is too insubstantial to support a conviction. *McKenzie v. United States*, 266 F.2d 524, 526–28 (10th Cir.).

Dr. Dempsey examined the defendant on March 17 and April 30, 1980. Each examination was of about one to one and one-half hours. Dr. Dempsey also reviewed earlier testimony of three Government witnesses and observed the testimony of three Government witnesses at the trial describing defendant's conduct at the robbery. This included hearing the testimony of Luna, who testified about defendant's mentioning robbing a bank about a month before the robbery, then playing basketball

the night before the robbery, and then planning the robbery that night. (III R. 269–70). Dr. Dempsey also reviewed a forensic report of a psychologist employed by the State of New Mexico who testified for the defendant, and Dr. Dempsey talked briefly with defendant's parents. (III R. 298–99, 309–10).

Dr. Dempsey's opinion was that defendant was suffering from a mental disease which he diagnosed as "[m]ajor depression," and that this illness was moderately severe, in the upper 25% of severity. (III R. 290, 312–13). He concluded, however, that defendant was not and had never been schizophrenic as far as he knew, based on defendant's history, including Madrid's family's testimony on his history up to the time of the robbery. (III R. 300–303).

We conclude that from Dr. Dempsey's testimony and that of the lay witnesses, including those who observed Madrid at the scene of the attempted robbery,[16] the jury could justifiably have found beyond a reasonable doubt that Madrid was competent at the time of the robbery. *Wion v. United States*, 325 F.2d 420, 430 (10th Cir.), *cert. denied*, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309. Dr. Dempsey's opinion was that at the time of the robbery defendant was able to know what he was doing and that he could conform his conduct to the requirements of the law. (III R. 300). Luna's testimony as to Madrid's acts in planning the robbery in advance is also supportive of the jury's verdict. Considering the evidence in the light most favorable to the Government, as we must after the guilty verdict, *United States v. Walton*, 552 F.2d 1354, 1366–67 (10th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277, we are satisfied that it is sufficient to sustain the verdict.

AFFIRMED.

---

**16.** Lay testimony from witnesses who have had an opportunity to observe the defendant's appearance and behavior is admissible on the issue of sanity. *United States v. Stewart*, 443 F.2d 1129, 1134–35 (10th Cir.); *McKenzie v. United States, supra*, 266 F.2d at 527 & n.4.