**UNITED STATES of America, Plaintiff,**

v.

**Hoang Bao NGUYEN, Defendant.**

**No. CR–96–0030–CAL.**

United States District Court,
N.D. California.

Jan. 9, 1997.

Jonathan Schmidt, Assistant U.S. Attorney, San Francisco, CA, for Plaintiff.

Barry J. Portman, Federal Public Defender, San Francisco, CA, for Defendant.

*ORDER FOR COMPETENCY EXAMINATION*

LEGGE, District Judge.

Defendant Nguyen has been indicted on one count of bank robbery in violation of 18 U.S.C. § 2113(a). Defense counsel states that he has encountered serious difficulties getting Nguyen's assistance in preparing a defense, and believes that Nguyen may be incompetent to stand trial. Defense counsel

has therefore requested a competency hearing pursuant to 18 U.S.C. § 4241(a), which provides:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

The court has read the parties' papers and finds that there is reasonable cause to grant defendant's motion for a competency hearing under the standard above, and to order a competency examination by an expert.

The parties disagree on what use may later be made at trial of defendant's statements elicited in the course of the competency examination. The government preliminarily contends that any ruling by this court on that issue is now premature, because no evidence yet exists which the government might want to use. However, a witness seeking the protection of the Fifth Amendment privilege against self-incrimination must assert the privilege before he testifies in order to avoid waiving it. *United States v. Kordel,* 397 U.S. 1, 7–10, 90 S.Ct. 763, 766–69, 25 L.Ed.2d 1 (1970). Nguyen has reasonably established that he would incriminate himself during a competency examination. Therefore this court should rule before the examination on what use the parties may make of Nguyen's statements so that defendant may decide whether to make statements.

### I. Statutory Bases for Exclusion of Defendant's Statements

■ Nguyen seeks the protection of Federal Rule of Criminal Procedure 12.2(c) for his statements. That rule provides:

> In an appropriate case the court may, upon motion of the attorney for the government, order the defendant to submit to an examination pursuant to 18 U.S.C. 4241 or 4242. No statement made by the defendant in the course of any examination provided for by this rule whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such testimony, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting mental condition on which the defendant has introduced testimony.

On its face, this rule applies only if the motion for the examination of the defendant is made by "the attorney for the government." Defendant Nguyen urges that, properly read in the context of its history of amendment and the legislative history of 18 U.S.C. § 4244, the rule also applies to motions by the defense. This court disagrees.

Prior to 1984, 18 U.S.C. § 4244 provided defendants a large part of the exclusionary protection that Nguyen now seeks:

> No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding.

In 1984, however, Congress enacted the Insanity Defense Reform Act, which includes present 18 U.S.C. §§ 4241–4247. Although the legislative history to that Act states that new section 4247(g) codifies the provisions of old section 4244 regarding statements made by a defendant during the course of an examination, this is not in fact the case. The provisions of old section 4244 have not been carried forward into the new Act, and the new Act is silent on the issue of exclusion which old section 4244 addressed. It is unclear whether this was an unintentional omission, or was a late change not reflected in the legislative history.

In 1987 the drafters of the Federal Rules of Criminal Procedure revived the protections of old section 4244 to a certain extent. Prior to 1987 the first sentence of Rule

12.2(c) said "pursuant to 18 U.S.C. 4242." That year, the Rules Committee amended this to read "pursuant to 18 U.S.C. 4241 or 4242." The Advisory Committee notes to the 1987 amendment say however that "The amendments are technical. No substantive change is intended."

Nguyen nonetheless argues that by this change the Committee intended to extend to defendants undergoing competency examinations pursuant to 18 U.S.C. § 4241 the protections that Congress had withdrawn in the 1984 Insanity Defense Reform Act, and that the Committee only accidentally left in the language restricting Rule 12.2(c)'s availability to motions made by the government. This is a plausible but not the most likely reading of Rule 12.2(c) and its history.

Rule 12.2(c)'s protections are strong *because* they apply to motions by the prosecution. The rule is a safeguard against abuse by the government. Rule 12.2 generally concerns "Notice of Insanity Defense or Expert Testimony of Defendant's Mental Condition," and gives the government significant power to move for examinations. Rule 12.2(c) therefore provides the defendant with significant protections against government action. And in 1987 the Committee extended those protections to apply to similar motions by the government under 18 U.S.C. § 4241 as well as section 4242.

The facial language of Rule 12.2(c) limits its applicability to government motions, and the theme of Rule 12.2 makes a reading upholding that limitation not only possibly but probably correct. This court therefore will not disregard that limitation of Rule 12.2(c).

## II. Constitutional Bases for Exclusion of Defendant's Statements

■ The Fifth Amendment, however, may still preclude use of Nguyen's examination statements at trial. If Nguyen's statements were not protected, he would be forced to choose between sacrificing his constitutional right not to incriminate himself and sacrificing his constitutional right not to stand trial if incompetent.

The trial of an incompetent defendant violates due process. *Medina v. California,* 505 U.S. 437, 453, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353 (1992). Nguyen cannot effectively assert that he is incompetent to stand trial without submitting to an examination by a psychiatric expert. But he cannot submit to the examination without taking a significant risk that he will incriminate himself. This dilemma is analogous to that in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), in which the United States Supreme Court held that a defendant who claims ownership of seized contraband in order to gain standing to assert a Fourth Amendment suppression motion cannot thereby be forced to sacrifice his Fifth Amendment right by evidence of his claim being admitted against him at trial. The *Simmons* Court explained:

> Those courts which have allowed the admission of testimony given to establish standing have reasoned that there is no violation of the Fifth Amendment's Self-Incrimination Clause, because the testimony was voluntary. As an abstract matter, this may well be true. A defendant is "compelled" to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will have to forgo a benefit, and testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit. However, the assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give up the benefit. When this assumption is applied to a situation in which the "benefit" to be gained is that afforded by another provision of the Bill of Rights, an undeniable tension is created. Thus, in this case [the defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, *we find it intolerable that one constitutional right should have to be surrendered in order to assert another.*

390 U.S. at 393–94, 88 S.Ct. at 976 (footnotes omitted) (emphasis added).

The same irreconcilable conflict is present in this case, here between Nguyen's right not to incriminate himself and his right not to stand trial if incompetent. Forcing him to choose between the two is likewise "intolerable."

The Supreme Court reached the same conclusion in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), where the defendant's statements were directly compelled because the examination was ordered by the trial judge *sua sponte*. The Court held that the admission of testimony about defendant Smith's future dangerousness, by a psychiatrist who had examined him for competency, violated Smith's Fifth Amendment privilege. Even though the psychiatrist did not testify to Smith's actual statements, admission of the testimony nevertheless violated Smith's rights because the psychiatrist's conclusions were closely based on what Smith said:

> Dr. Grigson's diagnosis, as detailed in his testimony, was not based simply on his observation of respondent. Rather, Dr. Grigson drew his conclusions largely from respondent's account of the crime during their interview.... Dr. Grigson's prognosis as to future dangerousness rested on statements respondent made, and remarks he omitted, in reciting the details of the crime. The Fifth Amendment privilege, therefore, is directly involved here because the State used as evidence against respondent the substance of his disclosures during the pretrial psychiatric examination.

*Id.* at 464–65, 101 S.Ct. at 1873–74 (footnote omitted). Testimony by the psychiatrist who will examine Nguyen for competency would similarly be based on Nguyen's disclosures, and would violate his Fifth Amendment privilege for the same reason.

The government argues that *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), rather than *Smith* is controlling. In *Buchanan*, the Court found no Fifth Amendment violation where the trial court allowed the testimony of a psychiatrist, who had examined the defendant for involuntary commitment, to be admitted to rebut the defendant's defense of extreme emotional disturbance. The *Buchanan* Court expressly distinguished *Smith* on two bases:

First, the trial judge in *Smith* had ordered a competency examination *sua sponte*, effectively compelling Smith's statements; while in *Buchanan* the defense and prosecution jointly moved for a psychiatric examination. The present case is distinguishable from *Buchanan* for the same reason. While the defense has made the present motion, Nguyen's statements to the examining psychiatrist are still "compelled" because of the tension between his due process and self-incrimination rights, discussed above. This concern was absent from *Buchanan*, where the psychiatrist examined the defendant only to consider involuntary commitment, not to evaluate his competency to stand trial. And here defendant's motion has expressly raised the issue of the future possible use of defendant's statements.

The second basis on which the *Buchanan* Court distinguished *Smith* was that Smith had neither asserted an insanity defense nor offered any psychiatric evidence as a defense at trial, while Buchanan's "entire defense strategy was to establish the 'mental status' defense of extreme emotional disturbance." *Buchanan*, 483 U.S. at 423, 107 S.Ct. at 2918.

The important distinction here, and in cases cited by the government, is between the constitutional right of an *incompetent* not to stand trial on the one hand, and various mental state *defenses* on the other. The former involves a *constitutional* right——the latter does not. *Buchanan* was precisely the case that the *Smith* Court anticipated in which "the State might have an interest in introducing psychiatric evidence to rebut petitioner's defense." *Id.* at 422, 107 S.Ct. at 2917 (emphasis added). In *Smith* the Court had noted:

> When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examina-

tion conducted by the prosecution's psychiatrist.

451 U.S. at 465, 101 S.Ct. at 1874. In *Buchanan* the Court extended this logic:

> We further noted: "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." [*Smith*, 451 U.S.] at 468 [101 S.Ct. at 1876]. This statement logically leads to another proposition: if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested. The defendant would have no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution.

483 U.S. at 422–23, 107 S.Ct. at 2917–18.

Thus the logic and the *Buchanan* holding are limited to the use of evidence from a *non-competency* psychiatric examination to rebut a defendant's insanity or other mental status *defense*. *Buchanan* does not stand for the proposition that a prosecutor may introduce evidence from a defendant's *competency* examination. The same is true of the cases the government cites for the proposition that statements made by a defendant during a competency examination may be used at trial for any number of purposes. In all of those cases the defendant underwent a non-competency examination and put on a mental status defense. *See United States v. Kessi,* 868 F.2d 1097 (9th Cir.1989); *United States v. Halbert,* 712 F.2d 388 (9th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); *United States v. Madrid,* 673 F.2d 1114 (10th Cir.), *cert. denied,* 459 U.S. 843, 103 S.Ct. 96, 74 L.Ed.2d 88 (1982) (expert formed opinion both from sanity examination and earlier competency examination); *United States v. Malcolm,* 475 F.2d 420 (9th Cir.1973) (joint competency and sanity examination).

If Nguyen uses the competency report at trial or sentencing——that is, as a defense——the government may use the report as well.

And, as required by Rule 12.2, if defendant presents a defense of insanity or other mental status through the testimony of an expert who conducted a *non-competency* examination, the government is entitled to have its own expert conduct a mental examination and testify regarding the results.

Defendant's motion limiting the use of any statements that Nguyen may make in his competency examination is therefore granted.

A status conference will be held January 24, 1997, at 1:30 p.m. to set a schedule for the competency procedures and for a later trial if defendant is found to be competent.

IT IS SO ORDERED.