Rychen **PADDACK, Arthur J. Darling, Henry Hannan, Donald D. Staudenmier, Marvin Hall, Carl M. Halvorson, et al., Plaintiffs-Appellants,**

v.

**DAVE CHRISTENSEN, INC., dba Pacific Coast Fabricating Co., Christensen Group, Inc., and David H. Christensen, an individual, Defendants-Appellees.**

**Nos. 82–3510, 83–3631.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1983.

Decided Oct. 24, 1984.

Thomas J. Barnett, David S. Paull, Bailey & Paull, Portland, Or., for plaintiffs-appellants.

David H. Wilson, Jr., Bullard, Korshoj, Smith & Jernstedt, P.C., Portland, Or., for defendants-appellees.

Before SNEED, NELSON, and REINHARDT, Circuit Judges.

SNEED, Circuit Judge:

The Trustees of several joint labor-management employee trust funds[1] filed suit against Dave Christensen, Inc. and his affiliated companies[2] for breach of several collective bargaining agreements. After a bench trial, the district court entered judgment for the Employer on the ground that the compliance audits asserting contribution deficiencies were inadmissible under the Federal Rules of Evidence. Although we agree that the audit reports and their summaries are based in part on inadmissible hearsay, we are uncertain whether the district court considered, as it should have, the audits for the limited purpose of explaining the basis of the expert's testimony under Rule 703. Thus, we reverse and remand this case to the district court for further proceedings. Because our disposition may require that the district court reach the merits of the case, we undertake a review of the district court's alternative legal rulings. While we have no quarrel with the district court's conclusion that if the audit reports are fully admissible the Employer is liable with respect to its field employees, we do disagree with the district court's conclusion that under the same circumstances the Employer is not liable with respect to shop employees.

Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

## FACTS AND PROCEEDINGS BELOW

This case has its roots in two joint labor-management trust funds for carpentry industry employees created in compliance with section 302(c)(5) of the Labor-Management Relations Act, 29 U.S.C. § 186(c)(5) (1982), and two collective bargaining agreements entered into by the Employer and the Carpenters' Union between 1970 and 1978. One of the agreements was a field agreement covering employees who worked on location, and the other was a shop agreement covering employees who worked in the Employer's shop. Under the agreements, the Employer made payments to the

---

1. The appellants are the Trustees of the Oregon-Washington Carpenters Health and Welfare, Pension, Apprenticeship and Training and Vacation Savings Trust Funds (hereinafter "Trustees" or "Trust Funds").

2. The appellees are Dave Christensen individually and two Wyoming corporations, Dave Christensen, Inc. dba Pacific Coast Fabricating, and Christensen Group, Inc. (hereinafter the "Employer").

Trust Funds for both field and shop employees and submitted monthly reports.

Apparently the Trustees of the Trust Funds suspected that the Employer's reports were incorrect. As a consequence the Trust Funds employed Touche Ross & Company ("Touche Ross") to perform an audit of the Employer's contributions for shop employees between January 1, 1973 and December 31, 1978 and for field employees between January 1, 1973 and January 30, 1979. The accountants were not requested to undertake a traditional financial statement audit.[3] Instead, they were requested to determine the extent of the Employer's compliance with the collective bargaining agreements. The compliance audit reports asserted that the Employer had wrongfully failed to contribute to the Trust Funds in the amount of $12,108.75 for shop employees and $14,093.11 for field employees.

Five months after Touche Ross completed the audit, the Trustees filed suit in an Oregon state court against the Employer for breach of the collective bargaining agreements. The Trustees sought to recover $31,009 for the unpaid contributions, liquidated damages, interest, the accountants' fees, and attorneys' fees. The Employer removed the action to federal court pursuant to 28 U.S.C. § 1441 (1982).

During the bench trial, the Employer objected to the admission of the audit reports into evidence. The district court reserved ruling on the issue of admissibility and proceeded with the trial. After the trial, the district court found that the audits were based on hearsay and inadmissible under Federal Rules of Evidence 803(6), 1006, and 703. Because it found that the Trustees had introduced no other evidence to support their allegations of contribution

deficiencies, the district court entered judgment for the Employer.

In order to preclude the need for a new trial in the event the evidentiary ruling was in error, the district court entered alternative conclusions of law and findings of fact. It found that if the audits had been admitted, it would have found the Employer liable for the alleged deficiencies with respect to the field employees' contributions, but not with respect to the shop employees' contribution deficiencies because the shop employee agreement did not satisfy section 302(c)(5) of the Labor-Management Relations Act. *See* 29 U.S.C. § 186(c)(5) (1982). The district court subsequently awarded $29,871.33 in attorney's fees to the Employer pursuant to 29 U.S.C. § 1132(g) (1982).

## II.

### ADMISSIBILITY OF THE COMPLIANCE AUDIT REPORTS TO PROVE THE CONTRIBUTION DEFICIENCIES

In its compliance audit Touche Ross first used an audit program with statistical sampling techniques to identify "problem" employees. Once a problem employee was identified, the accountants examined both Employer and nonemployer sources to determine whether a contribution deficiency existed.

The audit resulted in the production of three separate documents: (1) the accountants' workpapers and exhibits showing the results of the investigation of the Employer's contributions for every employee examined; (2) the audit reports which listed only those employees for whom, in the opinion of Touche Ross based on its investigation (as outlined in the workpapers and exhibits), insufficient contributions had been made by the Employer; and (3) certain one-page "summaries" of each of the

---

**3.** An accountant performs a financial statement audit in accordance with generally accepted auditing standards to express "an opinion on the fairness with which the [financial statements] present financial position, results of operations, and changes in financial position in conformity with generally accepted accounting principles." AICPA, *Statements on Auditing Standards* § 110

(1983). *See generally* M. Miller & L. Bailey, *Miller's Comprehensive GAAS Guide* (1983) (a comprehensive restatement of generally accepted auditing standards). Although a financial statement audit is based in part on hearsay, it is generally admissible as a business record of the audited entity under Fed.R.Evid. 803(6).

audit reports. The Trust Funds sought to have both the audit reports and their summaries admitted as evidence of the amount of the deficiencies.[4] They argued that the reports were admissible under: (1) the business records exception to the hearsay rule, *see* Fed.R.Evid. 803(6); (2) as summaries of voluminous writings, *see* Fed.R.Evid. 1006; and (3) as a basis of the expert's testimony, *see* Fed.R.Evid. 703. The district court concluded that the audit reports were inadmissible to prove the existence of the contribution deficiencies under each of these rules. We agree.[5]

A. *The Audit Reports Are Not Admissible Under Fed.R.Evid. 803(6)*

 Under Rule 803(6), for a memorandum or record to be admissible as a business record, it must be "(1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) 'the regular practice of that business to make the memorandum,' (4) and made by a person with knowledge or from information transmitted by a person with knowledge." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1036–37 (9th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982). Business records are admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed.R.Evid. 803(6). In this case the district court found that the audit reports were not made or kept in the ordinary course of business and that they were prepared for purposes of litigation. We agree.

Clearly, the audit reports are not the business records of the Trust Funds or the Employer. The administrator of the Trust Funds testified that the Trustees had no regular compliance audit procedure. Once the Trustees suspected that a deficiency existed, they would employ an accountant to perform the compliance audit. No evidence was submitted that such audits were conducted with any regularity. The irregular frequency and nature with which the audits were conducted also precludes their classification as business records of the Employer. Thus, the audit reports were not kept in the course of a regularly conducted business activity of the Trust Funds or the Employer.

We also believe that the compliance audit reports cannot be viewed as business records of Touche Ross.[6] This was not a regularly conducted audit of the Employer; it was a special audit ordered in response to the Trustees' suspicion of irregularities. These reports, which are the direct product of the accountants, are not "business records" of the accounting firm within the meaning of Rule 803(6). A contrary interpretation would allow any firm to produce "business records" that would be automatically admissible. Such reports do not contain the same reliability that normally attends records kept in the course of a regularly conducted business activity.

Even if we were to say that the audit reports were Touche Ross' business records, the district court's finding that they were prepared in anticipation of litigation precludes their admission. In this case the Trustees employed Touche Ross only

---

4. The district court and the parties interchangeably referred to the audit reports and their summaries. We choose to analyze only the audit reports. If the reports are admissible, their summaries gain admission under Rule 1006. Also, an attempt to introduce the workpapers or exhibits to establish the truth of the figures set forth would encounter difficulties similar to those discussed here.

5. The district court's evidentiary rulings are reviewed under an abuse of discretion standard. *See United States v. Rohrer*, 708 F.2d 429, 432 (9th Cir.1983).

6. *United States v. McClintock*, 734 F.2d 438, 450 (9th Cir.1984), is distinguishable from this case because it involved "blind" grading or evaluation of gems, which gave the appraisal reports a high degree of trustworthiness. *See id.* at 450 n. 10 (excluding reports that were prepared especially for plaintiff). Here, the accountant was hired by the Trust Funds and requested to determine the fund contribution deficiencies. The issue whether a financial statement audit report could ever be a business record of the accountant is best left for another day.

after they suspected that the Employer's contributions were deficient. "[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness." *Clark*, 650 F.2d at 1037 (citing *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)). This is because "where the only function that the report serves is to assist in litigation or its preparation, many of the normal checks upon the accuracy of business records are not operative." *McCormick on Evidence* § 308, at 877 n. 26 (E. Cleary 3d ed. 1984). Thus, we affirm the district court's refusal to admit the audit reports under Rule 803(6).[7]

B. *The Audit Reports Are Not Admissible As A Summary Under Fed.R. Evid. 1006*

██ Under Rule 1006, "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." The rationale behind the rule is to offer "the only practicable means of making their contents available to judge and jury." Fed.R. Evid. 1006 advisory committee note.[8] The proponent of a summary must establish a foundation that (1) the underlying materials upon which the summary is based are admissible in evidence; and (2) the underlying documents were made available to the opposing party for inspection. *See United States v. Johnson*, 594 F.2d 1253, 1254–57 (9th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 376 (1979). The Trust Funds have failed to establish both of these conditions.

---

7. Moreover, substantial evidence exists that the summaries were untrustworthy. For example, the Employer's cross-examination of the accountant supervisor revealed inaccuracies in the audit reports—several employees were improperly included or categorized.

8. Professor Wigmore describes the paradigm fact situation for the application of Rule 1006 as follows:

Where a fact could be ascertained only by the inspection of a large number of documents

---

1. *Admissibility of the Underlying Documents*

The Touche Ross accountant who supervised the audits testified that his employees relied on three sources of information to prepare the audit reports. These were: (1) the Employer's remittance reports of contributions submitted to the Trust Funds; (2) the rates of pay as evidenced by the payroll records, personnel files, and notations on the earnings records; and (3) "information from union sources that indicate [an] employee [had] worked for the employer but was not reported [on the Employer's records]." Transcript at 54–55. Because each of these sources is considered hearsay when introduced to support the existence of a contribution deficiency, the Trust Funds must establish an exception to the hearsay rule for each source in order for the audits to be admissible. *See* Fed.R.Evid. 802.

██ This presents no problem with respect to the first two sources relied upon by Touche Ross. Each are entries from the Employer's business records and admissible as such. *See* Fed.R.Evid. 803(6). Therefore, summaries of such entries are also admissible under Rule 1006. The third source of evidence, however, is not admissible under any exception to the hearsay rule. Union sources, who were not subject to cross-examination, fall within no exception to the hearsay rule. The use of the union sources to establish the existence of deficiencies, the truth of that which was asserted, implicates the traditional "hearsay dangers." *See* Wellborn, *The Definition of Hearsay in the Federal Rules of Evidence*, 61 Texas L.Rev. 49, 52–53 (1983).

---

made up of very *numerous detailed statements* —as, the net balance resulting from a year's vouchers or a year's accounts in a bank ledger—it is obvious that it would often be practically out of the question to apply the [best evidence] principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them.

4 J. Wigmore, *Evidence* § 1230, at 535 (Chadbourn rev. 1972) (emphasis in original).

It follows that the audit reports are based in part on inadmissible hearsay.[9] And it is clear that a summary of both inadmissible and admissible hearsay should not be admitted under Rule 1006. *See Soden v. Freightliner Corp.*, 714 F.2d 498, 506 (5th Cir.1983) (summary charts based on statistics that were based on letters and conversations found inadmissible); 5 D. Louisell & C. Mueller, *Federal Evidence* § 599, at 36 (1983 Supp.) ("Where summary proof is offered, ordinarily it amounts to 'evidence,' particularly where the underlying material was not itself admitted or was not as a practical matter examinable by the jury. In such cases, it is especially important to insure that the summary *rests entirely* upon admissible evidence." (footnote omitted) (emphasis added)). The proponent of the summary of both admissible and inadmissible hearsay is entitled to admission of only those portions that he can demonstrate are entirely admissible. *See United States v. Johnson*, 594 F.2d at 1255. *Cf. Wilkes v. United States*, 80 F.2d 285, 291 (9th Cir.1935) (applying common law predecessor of Rule 1006 to exclude accountants' summaries because proponent could not segregate admissible from inadmissible); *McCormick on Evidence* § 51, at 125 (E. Cleary 3d ed. 1984) ("If part of the evidence offered ... is admissible and a part is not, it is incumbent on the offeror, not the judge, to select the admissible part. If counsel offers both good and bad together and the judge rejects the entire offer, the offeror may not complain on appeal." (footnote omitted)).

The Touche Ross accountant, Thomas J. Godish, was unable to separate the admissible from the inadmissible and was largely unfamiliar with the actual procedures followed by his staff. During cross-examination, he could not indicate what sources were relied upon to determine the deficiency for each individual employee listed in the audit report.[10] He could do no more than recount the general procedures out-

---

**9.** There are two possible interpretations of the phrase "based in part on inadmissible hearsay." If the accountants talked to a union source who revealed that a deficiency existed with respect to an employee, and then they independently examined the Employer's records and found a deficiency, their assertion of a deficiency would not be based on hearsay. Thus, the examination of the records would be admissible to prove the amount asserted. However, if the accountants talked to a union source who stated that an Employer had worked 200 hours on a field job and their examination indicated that only 50 had been reported by the employer, the assertion of a 150 hour deficiency would be based "in part" on inadmissible hearsay. The conclusion that a deficiency existed would be correct only if the hearsay statement was correct. Under those conditions, we would exclude the accountant's audit figures asserting that deficiency. In this case the audits' conclusions were based on the latter type of "in part" hearsay. The main sources, when offered to show a contribution deficiency, did more than merely corroborate the information revealed by the other two sources. Had it done no more the Touche Ross accountant would have so testified. Moreover, it is unreasonable to assume that it only corroborated the Employer's business records. After all, the Trust Funds sought to obtain contributions with respect to employees whose records were incomplete at the very least. And Godish, it must be remembered, was unable to indicate the sources relied upon to determine the deficiency for each employee in the audit report. Had the third source been corroborative only of the other two sources, he would not have had this difficulty.

**10.** The following excerpts from the trial adequately demonstrate this point:

Q: (By Mr. Wilson [Employer's counsel on cross-examination] ) Mr. Godish, the information in front of you concerning Mr. Rasmussen [an employee] simply gives the total number of hours and the total number of hours worked versus the number reported; is that right?
A: That's correct.
Q: It doesn't indicate where those—where that information was derived from; is that correct?
A: No, it doesn't. Not that sheet of paper.
Q: Is there another sheet of paper that does indicate where the information came from?
A: No. It's done in accordance with the audit program and the audit program says where to pick these numbers up.
Q: And the audit program simply refers to payroll records?
A: Right. Exactly. Very—very general. Because payroll records vary from employer to employee—from employer to employer, and also from time to time, as I indicated, you went—your client went from a manual system to a data processing system to an additional system. So there's always change in these types of things.

. . . . .

Q: ... Can you identify what records were relied on in addition to these [the workpapers

lined in an audit program for compliance audits. Thus, neither the district court nor we know precisely what portions of the audit reports rest in part on the inadmissible hearsay. All is, therefore, inadmissible under Rule 1006.

#### 2. *Availability of the Underlying Documents*

Moreover, all the underlying documents are not available. Availability of the employers' records alone is not enough. The purpose of the availability requirement is to give the opposing party an opportunity to verify the reliability and accuracy of the summary prior to trial. It is true that the Employer had access to his own records, but no access to the union sources was provided. To the extent that the audit

> containing copies of a few pages of the payroll register] by you or the people working under you?
> A: Well, I presume that they saw all the payroll....
> Q: I don't want you to presume, I want you to testify what you know about.
> A: I already—I already indicated the way that these—the approach is done on these audits and that's all I can tell you.
>
> Q: ... The question I'd like you to answer is whether you can identify any specific documents which you or people working under you relied upon to find to support your claim that there was a shortage for Douglas Rasmussen other than the documents contained with Exhibit 115.
> A: No, I can't, because, as I said, the supporting documents to that exhibit are mere copies of portions of the payroll for that particular month. Does not in any way substantiate and support the 125½ hours. Only coincidentally do the hours agree to what you reported.
> Transcript of Proceedings 73–80 (Mar. 25, 1983). Similar exchanges occurred throughout the cross-examination of Mr. Godish:
> Q: ... I'd like to ask you about Mr. Sands, who appears in the field audit for October of 1977. Your audit claimed that there were 32 hours under reported for that month. Have you examined Exhibit 117 before today?
> A: I believe I had it yesterday.
> Q: Isn't it true that the exhibit, the payroll records attached to Exhibit 117 do support— do not support your result?
> A: Because they're incomplete, they don't support anything.

reports relied upon this information, the Employer was powerless to verify their accuracy.

#### C. *The Audit Reports Are Not Admissible Under Fed.R.Evid. 703*

Admissibility under Rule 703 presents a more difficult matter. Under it, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference ... need not be admissible in evidence." The Trustees attempt to employ this provision by arguing that, inasmuch as Godish relied on the audits as a basis for his opinion testimony, the audit reports are admissible to prove the existence of the contribution deficiencies. We disagree.

 Rule 703 merely permits such hearsay, or other inadmissible evidence,

> Q: Do you know what records were relied on in addition to the ones attached to Exhibit 117 to support the claim you made for Mr. Sands of your own personal knowledge?
> A: No.
> Q: Isn't that true for each of the people in the audit?
> Mr. Paull [Trustees' counsel]: Your Honor, this question has been asked and asked, and I think there should be a stop to it. I object to the question on the basis that it's been asked and answered, and it's argumentative at this point.
> Mr. Wilson: It's been asked and answered for certain employees. Not for others.
> Mr. Paull: The question counsel asks is generally not for certain employees.
> The Court: Well, I'm going to overrule the objection. You may answer.
> Q: (By Mr. Wilson) Mr. Godish,....
> A: The payroll records that we apparently saw indicated 40 hours one week, 8 hours another week for a total of 48 hours.
> Q: Are you referring to Mr.....
> A: You reported 16 hours, and that's how the 32 hours deficiency was arrived at.
> Q: My question is, is it not true that you do not have personal knowledge of the specific employment records, the specific records that were relied on to support the claims for each individual employee in the audit?
> A: I was not on the scene, as I testified, the whole period of the time of the audit.
> Q: So the answer is you did not?
> A: That's correct. And I will say that with regard to every one of these and so I don't know what else you want.
> *Id.* at 84–86.

upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion.[11] *See Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349, 1356 (5th Cir.1983) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, Fed.R.Evid. 703, but not as general proof of the truth of the underlying matter, Fed. R.Evid. 802."). *See generally* S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 467 (3d ed. 1982). It does not allow the admission of the reports to establish the truth of what they assert. Our opinion in *United States v. Sims,* 514 F.2d 147 (9th Cir.), *cert. denied,* 423 U.S. 845, 96 S.Ct. 83, 46 L.Ed.2d 66 (1975), was based on this interpretation of Rule 703:

> Upon admission of such evidence, it then, of course, becomes necessary for the court to instruct the jury that the hearsay evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence.

*Id.* at 149–50.[12] The district court properly interpreted Rule 703 to find the audit reports inadmissible to prove the contribution deficiencies.

## III.

## EXAMINING THE DISTRICT COURT'S JUDGMENT

It does not follow, however, that the district court was correct when it held that "judgment must be entered for the defendants because the plaintiffs introduced no other evidence that any employee performed work covered by the collective bargaining contracts for which the defendants failed to make contributions to the trust funds." *Paddack v. Dave Christensen, Inc.,* No. 80–257FR, at 9 (Aug. 12, 1982). This strongly suggests that the district court wholly disregarded both the audit reports and the opinion of Godish because of the inadmissibility of the audit reports to prove the truth of that which appears therein.[13]

■ This was incorrect. The audit reports are admissible to show the basis of Godish's opinion. That opinion was evidence of the deficiencies. *See Bieghler v. Kleppe,* 633 F.2d 531, 533–34 (9th Cir.1980). It follows, therefore, that the district court had a duty to rule on the issue of the Employer's liability. In making this determination the audit reports were admissible

---

**11.** *See* American Bar Association, *Emerging Problems Under the Federal Rules of Evidence* 209 (1983):

Once an expert gives an opinion based upon inadmissible hearsay, the question whether the jury should be provided with the otherwise inadmissible information often arises. Rule 703 does not directly address this problem, nor does Rule 705. Courts considering this question have concluded that the inadmissible hearsay used by an expert may be admitted solely to illustrate and explain the expert's opinion. It is not otherwise admissible as evidence.

*Id.* (citing *American Universal Insurance Co. v. Falzone,* 644 F.2d 65 (1st Cir.1981); *United States v. Madrid,* 673 F.2d 1114 (10th Cir.), *cert. denied,* 459 U.S. 843, 103 S.Ct. 96, 74 L.Ed.2d 88 (1982)).

**12.** Both *American Universal Insurance Co. v. Falzone,* 644 F.2d 65, 66 n. 1 (1st Cir.1981) and *United States v. Madrid,* 673 F.2d 1114, 1118 n. 4 (10th Cir.), *cert. denied,* 459 U.S. 843, 103 S.Ct. 96, 74 L.Ed.2d 88 (1982), clearly indicate that the district courts in those cases instructed the jury that the testimony was being admitted to

show the basis of the expert's opinion and not for the truth of the underlying source.

**13.** The Trust Funds seem to argue that they could prove the contribution deficiencies only through the admission of the audit reports. This is not so. The Trust Funds should have first brought in the Employer's records for each employee identified in the audit reports. Using the Employer's records, they could have established the Employer's actual contributions for each employee based on the alleged hours worked on a specific project. At this time, any mathematical errors could have been easily determined. Then, the Trust Funds could have introduced evidence that contradicted the Employer's records. Such evidence could have consisted of the testimony of the employee in question, other employees, the union officials, or accounting experts. The Trust Funds failed to provide such competent evidence to establish a variance between the Employer's contribution and the alleged appropriate contribution for each employee. Instead, they chose to rely upon the inadmissible audit reports and the testimony of the accountant, which left much to be desired.

*only* for the limited purpose of explaining the basis of Godish's testimony. *See* Fed. R.Evid. 703.[14] We therefore reverse and remand this case for a redetermination of the existence and scope of the Employer's liability in light of a proper understanding of the applicable Federal Rules of Evidence.[15]

## IV.

### DISTRICT COURT'S ALTERNATIVE FINDINGS OF FACT AND CONCLUSIONS OF LAW

As already pointed out, the district court, in order to prevent the need for a new trial, made findings of fact and conclusions of law as if the audits were admitted. Because of our interpretation of Rule 703, it is possible that the Trust Funds on remand may prevail on the assertion of the contribution deficiencies. This makes it necessary to review the alternative ruling of the lower court.

▇▇▇▇ In that ruling the district court found the Employer liable for certain enumerated field employees. However, it also held that the Employer was not liable for any shop employees' contributions because the shop agreements did not satisfy the requirements of 29 U.S.C. § 186(c)(5) (1982). We affirm the lower court's findings with respect to the field employees and reverse those findings with respect to the shop employees.[16]

Section 302 of the Labor-Management Relations Act, 29 U.S.C. § 186(c)(5) (1982), allows employers to contribute to union trust funds provided that certain requirements are met. One requirement under this section is that, before an employer may pay trust fund contributions, the obligation to contribute must be specified in a written agreement. The district court found that the written agreement requirement was not satisfied in this case because the collective bargaining agreements covering shop employees did not expressly incorporate by reference the trust agreements. We believe this to be too strict an application of the requirement.

The statutory language requires only that "the detailed basis on which such payments are to be made is specified in a written agreement." *Id.* § 186(c)(5)(B). Cases interpreting this language have not insisted upon an explicit incorporation of the trust agreements by the collective bargaining agreement; they have only required some clear reference to the trust agreement. *See, e.g., Alvares v. Erickson,* 514 F.2d 156, 161 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); *Hinson v. NLRB,* 428 F.2d 133, 139 (8th Cir.1970).

▇▇▇▇ Such a clear reference exists here. The written collective bargaining agreements specify that the basis for the fund contributions is the master trust agreement. This document either contains the detailed terms or refers to other trust agreements in which such terms are set forth. It is not necessary that the parties intend to incorporate expressly the trust agreements in the shop employees bargaining agreements. It is clear that the parties in entering written collective bargaining agreements intended to be bound by the terms of the trust agreements. Further

---

**14.** At one point in its Rule 703 discussion, the district court states that it is impossible to tell whether the opinions reflected in the audit reports are based on the types of facts or data reasonably relied upon by accountants in determining whether or not trust fund contribution deficiencies exist. We disagree. Accountants normally rely on audit reports as the basis of their opinions.

**15.** Because we remand this case for additional proceedings, we leave it in the district court's discretion whether to allow the Trust Funds to attempt to segregate the portions of the audit reports based on inadmissible evidence from those portions simply based upon the Employer's records.

**16.** The district court's interpretation of the collective bargaining agreement is reviewed *de novo, see Kemmis v. McGoldrick,* 706 F.2d 993, 996 (9th Cir.1983), and federal law controls the interpretation of agreements authorized by section 302, *see Aitken v. IP & GCU–Employer Retirement Fund,* 604 F.2d 1261, 1264 (9th Cir. 1979).

evidence of this intent is provided by the Employer's conduct. Between 1971 and 1979, the Employer submitted monthly remittance reports to the Trust Funds covering both shop and field employees. Thus, the district court erred by finding that no liability could exist for shop employees' contribution deficiencies.

## V.

## ATTORNEY'S FEES

 Having considered the factors established in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir.1980), we believe that the district court abused its discretion in awarding attorney's fees to the Employer. The district court found that if the audit reports had been admitted, the Trust Funds would have prevailed on at least some of their claims. To that extent, the Trust Funds' "culpability" consists only in their inability to prove their case. That inability does not justify an award of attorney's fees. *See Carpenters Southern California Administrative Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.1984).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

REINHARDT, Circuit Judge, concurring and dissenting:

I concur fully in sections IV and V of the majority's opinion. I also agree that the district court erred in refusing to admit the audit reports under Rule 703 and that the reports were admissible under that rule to show the basis for the auditor's opinion. I dissent from the majority's inexplicable decision to remand the case to the district court so that it may reconsider its alternative holding that if the audit is admissible the appellants shall prevail with respect to certain specified claims.[1]

Appellants specifically moved, *inter alia,* for admission of the audit reports under Rule 703. There is no question that if the audit reports qualified under that rule, as

we all agree they did, they would be admitted for the particular, limited purpose permitted under the rule. That was apparent to the attorneys making the motion, those opposing the motion and also, we must assume, to the district judge. As the majority acknowledges, the appellants argued in the district court that the audit reports were admissible under Rule 703 "as a basis of the expert's testimony." (Majority Opinion, p. 1258.) The district judge held that the reports were not admissible under that rule, but that if they were the appellants would prevail. The majority says that the district judge held that the audit reports were not "fully admissible" under Rule 703. The district judge held no such thing. Instead, she held only that they were not admissible under a rule that contemplates admission for a *limited* purpose—to establish the basis of the expert's opinion. Thus the majority's decision to remand so that the district court may determine what to do now that we have held that the audit reports *are* admissible for the very purpose contemplated by Rule 703 is, in my view, wholly unwarranted. The district court has already made that determination in its alternative decision, and there is not even a colorable basis for reversing it. In offering the district court a chance to reconsider its alternative decision, when there is no legal reason for a remand, the majority, in my opinion, exceeds its authority.

I also dissent from the majority's conclusion that the audit reports are inadmissible under Rule 1006. The audit here was a normal, run of the mill trust fund audit conducted by Touche Ross, one of the Big Eight accounting firms. The strictures the majority suggests are applicable to the admissibility of such audits would render trust fund actions against delinquent or dishonest employers impractical. I believe, however, that despite these implications the opinion will be readily distinguishable and of limited future applicability because of its dependence on the factual assump-

---

**1.** The district court made alternate findings of fact and conclusions of law "in the event that the court's ruling on the admissibility of the audit and the Section 302 defense are reversed on appeal."

tions and speculative hypotheses set forth in footnote 9.

The majority's expectations with regard to the specific knowledge possessed by a supervising auditor run counter to the purpose of permitting testimony by supervisors. Followed to its logical conclusion, the majority's approach would require auditing firms to offer as witnesses all of the numerous current and former employees who participated in the audit. Such is clearly contrary to the well-established law in this circuit and elsewhere. *See, e.g., United States v. Soulard,* 730 F.2d 1292 (9th Cir.1984) (IRS agent permitted to testify on basis of bank deposit analysis conducted by others); *In re Japanese Electronic Products,* 723 F.2d 238, 277 (3d Cir. 1983) (economic consultant may reasonably rely upon reports by his own consulting firm); *American Universal Insurance Co. v. Falzone,* 644 F.2d 65, 66 (1st Cir.1981) (fire marshal permitted to testify on basis of report prepared by a team of investigators under his supervision); *United States v. Morrison,* 531 F.2d 1089, 1094–95 (1st Cir.1976), *cert. denied,* 429 U.S. 837, 97 S.Ct. 104, 50 L.Ed.2d 103 (1976) (FBI gambling expert permitted to testify on the basis of an analysis of the betting slips and records of an illegal gambling operation that he supervised and validated but which was performed by others); *cf. Navel Orange Administrative Committee v. Exeter Orange Co.,* 722 F.2d 449, 453 (9th Cir. 1983) (the head of an administrative agency may testify on basis of agency investigation that he did not participate in). Again, however, the majority opinion should be limited to the peculiar, if not necessarily accurate, "facts" upon which it relies. *See* Majority Opinion footnotes 9 and 10.

When an expert testifies on the basis of a study conducted by someone else, there is no requirement that he have personal knowledge of the details surrounding its undertaking. Similarly, when the expert is the supervisor of the study, there is no reason to exclude a study which forms the basis of his expert testimony simply because the expert is himself unfamiliar with certain details surrounding the actual re-

search done. It therefore follows that the questions raised by the defendants regarding alleged imperfections in the audits, which they claim that the supervisor could not adequately explain because he did not conduct the audits himself, should be directed to the weight and sufficiency to be accorded the audits by the factfinder rather than to their admissibility. There are many ways in which the defendants could, at trial, have pursued the question of the accuracy of the audits. For example, defendants have suggested no reason why they could not have called the individuals who performed the actual work as witnesses, if they were not satisfied with the supervisor's responses to their questions. Alternatively, the defendants could have ordered their own audit of the records, or they could have called their own expert witness to dispute the findings of the Touche Ross audit.

Finally, I would note that while the majority holds that the audit reports are based on inadmissible hearsay because the auditors did not limit themselves to looking at records but obtained certain preliminary information by talking to employer and union representatives, the defendant vigorously argued in the district court that the audits were inaccurate because the auditors did not talk to *enough* people. My disagreement with the majority as to how the oral information obtained by the auditor should be categorized is hardly a matter worth pursuing here. My colleagues and I simply read the record and analyze the facts differently. Nevertheless, in light of the arguments the employer's counsel made below, the irony of a reversal on the hearsay ground will surely not escape him.

It would be sufficient to find the audit reports admissible under either Rule 703 or Rule 1006. I express no view concerning the applicability of Rule 803(6) except to note that it is patently clear that the audits were not prepared for the purpose of litigation. Until the audit was performed, the trust fund could not know with any certain-

ty that it was owed any monies, let alone that the defendant would refuse to pay.

I would affirm the district court's alternative decision, but would reverse and remand the remaining portions of its original decision for the reasons given by the majority in sections IV and V of its opinion.

The appeal is dismissed. Each party shall bear its own costs and attorneys' fees.