NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

03-1438, -1439, 1440, -1441, -1442, -1443

DESIGNING HEALTH, INC.,

Plaintiff-Cross Appellant,

and

BERNARD COLLETT and ROBERT MACINTOSH COLLETT,

Plaintiffs/Third Party Defendants-
Cross Appellants,

and

COLLETT VETERINARY CLINIC, INC. and COLLETT FAMILY TRUST,

Third Party Defendants-Appellees,

v.

UDO ERASMUS,

Defendant/Third Party Plaintiff-
Appellant,

and

FLORA, INC., FLORA MANUFACTURING AND DISTRIBUTING, LTD.,
and THOMAS GREITHER,

Defendants-Appellants,

and

GABRIEL LIGHTFRIEND,

Defendant.

DECIDED: June 1, 2005

Before LOURIE, CLEVENGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

DECISION

Udo Erasmus ("Erasmus"), Flora, Inc. and Flora Manufacturing and Distributing, Ltd. (the "Flora Companies"), and Thomas Greither ("Greither")[1] appeal the decision of the United States District Court for the Central District of California denying their motion for judgment as a matter of law ("JMOL") regarding (1) a jury verdict that they were liable for fraud; (2) the jury's award of damages resulting from that fraud; and (3) the jury's verdict that they were liable for conspiracy to commit fraud. Designing Health, Inc. v. Erasmus, Nos. CV 98-4758, 99-9088 (C.D. Cal. May 2, 2003) ("Order"). Erasmus alone appeals (1) the district court's denial of his motion for JMOL regarding the jury's verdict that he was liable for breach of fiduciary duty; (2) the jury's award of damages for that breach; and (3) the district court's grant of summary judgment dismissing his counterclaim for libel. Order, slip op. at 20.

For their part, Designing Health, Inc. ("DH") and Bernard Collett and Robert MacIntosh Collett (the "Colletts")[2] cross-appeal with respect to the following: (1) the district court's dismissal with prejudice of DH's patent infringement claims, Designing Health, Inc. v. Erasmus, CV 98-4758 LGB (C.D. Cal. Feb. 28, 2002); (2) the district

---

[1] We refer to Erasmus, the Flora Companies, and Greither collectively as "defendants."

[2] We refer to DH and the Colletts collectively as "plaintiffs."

03-1438,-1439,-1440,            2
-1441,-1442,-1443

court's ruling that Greither was not subject to punitive damages as a result of fraud against DH, <u>Designing Health, Inc. v. Erasmus</u>, CV 98-4758 LGB (C.D. Cal. Nov. 8, 2002); (3) the district court's award of attorney's fees to Flora for defense of DH's patent infringement and unfair competition claims, <u>Order</u>, slip op. at 33; (4) the district court's award of attorney's fees to Erasmus for defending against DH's patent infringement and unfair competition claims, <u>id.</u>; and (5) the denial of DH's claim against Erasmus for attorney's fees, <u>id.</u>, slip op. at 30.

For the reasons set forth below, we conclude that the damages awards against Erasmus and the Flora Companies for fraud cannot stand. Accordingly, the judgment against Erasmus in the amount of $132,144 and the judgment against the Flora Companies in the amount of $1,280,000 for fraud are reversed. Also reversed is the judgment against Erasmus in the amount of $747,144 for breach of fiduciary duty. In all other respects, the final judgment of the district court is affirmed. Thus, we <u>affirm-in-part</u> and <u>reverse-in-part</u>.

DISCUSSION

I.

Between 1992 and 1994, the Colletts developed an animal food supplement product based on flax and other oil seeds. The Colletts formed DH in March of 1994, in order to manufacture and produce the animal supplement, and later, a human version of the supplement. The flax seed product, bearing the name "Udo's Original," was marketed by Udo Erasmus, an author of books on nutrition. Erasmus served as a consultant and a director of DH until his resignation in June of 1998.

Thomas Greither is the president and owner of the Flora Companies, which also specialize in health food products and supplements. Erasmus worked separately with the Flora Companies in order to market similar "Omega 3" and "Omega 6" health supplement products under the name "Udo's Choice."

DH and the Colletts brought suit against Erasmus, the Flora Companies, and Greither in the Central District of California, asserting various claims. Two of those claims are relevant to this appeal. First, plaintiffs asserted a claim of fraud and conspiracy to commit fraud, based on events surrounding a March 1996 meeting between the parties in Anaheim, California. Fifth Amended and Supplemental Complaint at 9. Specifically, plaintiffs alleged that Erasmus, the Flora Companies, and Greither represented that "[i]f Plaintiff DH would terminate its present Canadian distributors, and if Plaintiff DH would terminate its distributors which sold DH products to health food stores in the United States, . . . Defendants Flora Inc., and Flora Ltd., would, on a best-efforts basis, promote, exclusively distribute and sell Plaintiff DH's products in Canada and exclusively in the U.S. to health food stores." Id. Plaintiffs also alleged that Erasmus, the Flora Companies, and Greither represented that "[i]f Plaintiff DH would agree to cease using its present packaging design (used by Plaintiff DH from November 1993 into 1996), which included the designation 'Udo's Original,' and at times a picture of Defendant Erasmus, and would agree to use the designation 'Udo's Choice' on DH's products, Flora Inc., and Flora Ltd., on an exclusive best-efforts basis, would sell and place DH's products in four thousand (4,000) health food stores which carried Flora Ltd. and Flora Inc.'s products in Canada and the United States." Id. at 10. Plaintiffs further alleged that Greither promised that the Flora Companies would be

selling 15,000 to 20,000 units per month of DH's product by the end of 1997 and 30,000 to 40,000 units per month by the end of 1998. Plaintiffs assert that as a result of defendants' representations, DH entered into distribution agreements with the Flora Companies.

According to the complaint, however, defendants' real intent was: "(1) to have Plaintiff DH relinquish its independent goodwill in the trade designation 'Udo's Original' in which DH had expended considerable expense and resource to develop in the marketplace, and (2) to have DH limit, in 1996 and 1997, its independent marketing and promotion of DH's products, and (3) to have DH limit its development of its independent goodwill and sales, while Defendants secretly undertook to develop products competitive to DH, which Defendants would then pass off as DH's products, using the same formula, trade dress and labels of DH, claiming to retail customers that DH was either 'out of business,' or that the Defendants' products 'were in fact the replacement products for DH products.'" Fifth Amended and Supplemental Complaint at 12.

In their complaint, DH and the Colletts also charged that Erasmus breached a fiduciary duty to DH. Plaintiffs alleged that, while a director of DH, Erasmus entered into agreements with the Flora Companies under which he created, marketed, and developed products that directly competed with the products of DH. Plaintiffs also alleged that, while a director of DH, Erasmus disclosed proprietary confidential information to the Flora Companies and induced DH to invest considerable sums in advertising and promoting Erasmus' likeness in association with DH's food supplement products. At the same time, plaintiffs asserted, Erasmus entered into an agreement with Greither that provided that Greither and Erasmus would jointly own all rights in

03-1438,-1439,-1440,                5
-1441,-1442,-1443

Erasmus' name and likeness for use in marketing food supplement products.  Fifth Amended and Supplemental Complaint at 3-4.

Plaintiffs asserted that the following recovery was warranted as a result of the alleged fraud: (i) profits that DH would have earned had it not entered into the distribution agreements with the Flora Companies ("lost profits" theory); (ii) costs DH incurred in reliance on the alleged misrepresentations ("out-of-pocket loss" theory);  and (iii) profits that DH would have earned under the distribution agreements into which it entered with the Flora Companies, had the representations upon which plaintiffs relied been true ("benefit of the bargain" theory).  As far as the breach of fiduciary duty claim against Erasmus was concerned, DH asserted that it was entitled to recover: (i) payments it had made for the purpose of promoting Designing Health while using Erasmus as its spokesman; and (ii) those payments it had made to Erasmus while he served as a director and manager of Designing Health.

In due course, the case proceeded to trial on the fraud, conspiracy to commit fraud, and breach of fiduciary duty claims.  At trial, DH presented the following evidence in support of its fraud damages claims:  (1) the testimony of Bernard Collett that once DH entered into the distribution agreements with the Flora Companies, DH terminated its relationships with approximately four distributors who had produced somewhere in the range of $600,000 to $700,000 sales income during the six-month period prior to termination; (2) the testimony of Bernard Collett that DH's gross profit margin on sales to the Flora Companies under the distribution agreements was approximately $3 per unit;  (3) evidence of DH's gross sales figures for pet health supplement products for the years 1993 through 1997; and (4) evidence of DH's total sales of human health

supplement products for the years 1995 through 2000.

As far as the breach of fiduciary duty damages claim was concerned, DH presented evidence indicating what it said it spent in connection with its relationship with Erasmus for the promotion of its health supplement products. This evidence was embodied in exhibits referred to as the "15000 Series." During trial, Bernard Collett described the 15000 Series as:

> a compilation of expenditures of Designing Health from inception in 1994 that were costs to promote the goodwill of Udo Erasmus on our promotional material, our labels, his book promotions, and all of the things that we had done over those years to promote Designing Health, using him as the principal spokesman.

Tr. at 1525. According to DH, these payments totaled $445,750. DH also presented evidence of payments made to Erasmus as a director and manager of DH. According to DH, these payments totaled $245,818.

At the close of the evidence, the court gave the following instructions with respect to fraud damages and damages for breach of fiduciary duty:

> FRAUD AND DECEIT – DAMAGES – OUT OF POCKET RULE
>
> If you find that a party is entitled to a verdict on its claim for fraud or negligent misrepresentation, you must then award that party damages, if any, caused by the fraud or negligent misrepresentation upon which you base your finding of liability.
>
> The amount of the award should include:
>
> 1. Amounts actually and reasonably expended in reliance upon the fraud.
> 2. An amount which will compensate the party for any loss of profits or other gains which were reasonably anticipated and would have been earned by the party but for the fraud or negligent

misrepresentation.

Court Instruction No. 42.

### BREACH OF FIDUCIARY DUTY – ACTUAL DAMAGES

If you find in favor of Designing Health, you must determine the total dollar amount of its damages, if any, that were caused by the breach of fiduciary duty by Erasmus.

In determining such damages, you shall consider the following:

1. Any noneconomic losses or injuries which Designing Health has had or will probably have in the future;

2. Any economic losses which Designing Health has had or will probably have in the future, including:

(a) Anything of value or any profit Erasmus received as a result of the breach of fiduciary duty;

(b) Any loss of Designing Health's property or assets caused by the breach of fiduciary duty; or

(c) Any loss of profits or income which Designing Health could reasonably have expected to earn had the fiduciary duty not been breached.

Court Instruction No. 27.

The jury returned verdicts in favor of DH and the Colletts and awarded fraud damages against Erasmus in the amount of $132,144 (including punitive damages) and against the Flora Companies in the amount of $1,280,000. It awarded breach of fiduciary duty damages against Erasmus in the amount of $747,144. As noted, the district court denied the defendants' post-trial JMOL motions.

II.

On appeal, in addition to challenging the judgment of fraud against them, defendants argue that the award of damages in favor of the plaintiffs constituted error for several reasons. First, defendants contend that DH failed to offer any evidence of out-of-pocket losses. Second, they urge that DH is not entitled to benefit-of-the-bargain damages as a matter of law. Finally, they argue that DH did not have sufficient relevant operating history to establish lost profits for its health supplement product for humans, and that it failed to offer evidence sufficient to show: (1) what profits, if any, it would have made in the retail health food store market had it not entered into the distribution agreements with the Flora Companies, and (2) that such profits would have been more than the profits that DH made from the Flora Companies' marketing and sales.

In response, DH contends that, under California law, it is entitled to benefit-of-the-bargain damages. According to DH, its benefit-of-the-bargain damages are equal to its expectancy under the distribution agreements. It argues that this expectancy can be determined based upon the following: (1) the testimony of Bernard Collett that DH's profit per unit of human product sold by the Flora defendants was $3.00; and (2) the Flora Companies' promise to sell 20,000 units per month by the end of 1997, and 40,000 units per month by the end of 1998. Based on the foregoing, DH argues that it is entitled to benefit-of-the-bargain damages totaling $1,620,000.00.

As for lost profits, at oral argument, counsel for DH argued that such profits could be established with reasonable certainty based on the evidence of DH's gross sales figures for pet products and for human products in the years prior to entering into the distributorship agreements with the Flora Companies. In that regard, DH relied on the

testimony of Bernard Collett that DH terminated relationships with distributors who provided sales of $600,000 to $700,000 for the six-month period prior to their termination. According to DH, this data demonstrates that in the years prior to entering into the agreements, the ratio of sales of pet to human products was two-to-one. Thus, according to DH, it is reasonable to conclude that this ratio would have remained constant had DH not entered into the distributorship agreements, and it is possible to extrapolate lost profits based on DH's actual sales of pet products during the period of the agreements. Counsel for DH confirmed at oral argument that the above "data points" are the only evidence in the record to support a lost profits damages award against the Flora Companies.[3]

California's general tort recovery statute sets forth the following measure of damages:

> BREACH OF OBLIGATION OTHER THAN CONTRACT. For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

Cal. Civil Code § 3333; see also French v. Merrill Lynch, 784 F.2d 902 (9th cir. 1986).

Under California law, in cases involving fraud where property is not exchanged, damages under section 3333 are limited to the "actual losses suffered because of the misrepresentation," regardless of whether a fiduciary relationship existed between the parties. Gray v. Don Miller & Assocs., 674 P.2d 253, 256 (Cal. 1984) (quoting Gagne v. Betran, 275 P.2d 15 (Cal. 1954)). Under this measure of damages, a plaintiff can

---

[3] DH fails on appeal to point to any evidence that was presented in the district court in support of its out-of-pocket loss theory of damages.

recover "out-of-pocket" losses and lost profits, but a plaintiff is barred from recovering "benefit-of-the-bargain" damages.  See Christansen v. Roddy, 231 Cal. Rptr. 72, 78 (Cal. Ct. App. 1986) (Fifth District) ("The proper measure of tort damages is the 'out-of-pocket' measure; successful tort plaintiffs are not entitled to have damages computed on a contract or 'benefit-of-the-bargain,' theory." (citation omitted)); Kenly v. Ukegawa, 19 Cal. Rptr. 2d 771, 774 (Cal. Ct. App. 1993) (First District) ("If the 'wrong' had not been done, Kenly presumably would not have borrowed funds to purchase the note; if he incurred damages from that transaction, he is entitled to be made whole.  However, Kenly is not entitled to placement in a better position than he would have occupied absent the fraud."); Eckert Cold Storage, Inc. v. Behl, 943 F. Supp. 1230, 1234 (E.D. Cal. 1996) ("Plaintiffs' position is not supported by the main line of case authority. Under this precedent, section 3333 does not provide for benefit of the bargain recovery, even if Grant acted as plaintiffs' fiduciary. . . . Rather, plaintiffs' recovery must be limited to the losses proximately caused by Grant's alleged misrepresentations: the damages awarded should place plaintiffs in the position they would have occupied had the misrepresentations not occurred." (citations omitted)).

Also under California law, it is well established that damages must be proven with "reasonable certainty" in both contract and tort cases.  See Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 961 (9th Cir. 2001); see also Mann v. Jackson, 296 P.2d 120, 123 (Cal. 1956).  Moreover, in order to recover damages for loss of profits, there must be a "satisfactory basis for estimating what the probable earnings would have been had there been no tort.  If no such basis exists, . . . it may be necessary to deny such recovery."  Natural Soda Prods., Co. v. City of Los Angeles,

143 P.2d 12, 17 (Cal. 1943). Generally, the evidence must make reasonably certain the nature, occurrence, and extent of loss of prospective profits. Piscitelli v. Friedenberg, 105 Cal. Rptr. 2d 88, 114 (Cal. Ct. App. 2001).

We conclude that the evidence presented by DH in support of the fraud damages award is insufficient as a matter of law. First, as indicated, under California law, DH is not entitled to recover benefit-of-the-bargain damages. Second, DH has failed to establish lost profits with reasonable certainty. The testimony of Mr. Collett concerning the terminated distributors is insufficient for a number of reasons. As noted by the Flora Companies, the testimony fails to establish that DH terminated the distributors in reliance on the distribution agreements. Most importantly, it fails to establish the profits, if any, that DH derived from sales to the terminated distributors. The evidence of DH's gross sales figures for pet products and for human products in the years prior to entering into the distributorship agreements is also insufficient to establish damages. This evidence fails to establish the profits, if any, that DH derived from sales of the human products prior to entering into the distribution agreements. In addition, DH offered no lay or expert testimony to establish prospective sales. Merely pointing to past sales is not enough, especially given the fact that DH had only recently entered into the market for sales of its product for humans.

Because the record evidence does not sufficiently support the jury's fraud damages award against defendants, the district court's denial of JMOL as to the fraud damages award is reversed.

As noted, Erasmus also appeals the judgment against him in the amount of $747,144 for breach of fiduciary duty. In challenging this damages award, Erasmus

argues that the 15000 Series was improperly admitted under Federal Rule of Evidence 1006. This is so, according to Erasmus, because DH failed to establish that the underlying materials upon which the summaries are based were admissible in evidence, and because DH failed to make the materials reasonably available to Erasmus.

In response, DH contends that the exhibits in the 15000 Series were properly admitted into evidence as summaries under Rule 1006 because they are based on evidence that was otherwise admissible at trial and that was reasonably available to Erasmus. DH argues that the testimony of Marianne Rensing, DH's accountant, authenticates and establishes a foundation for the accounting documents that underlie the 15000 Series. With respect to Exhibit 15002, DH points to Ms. Rensing's testimony that she routinely and in the course of business supervised the creation of the check registers identified as Exhibits 13000 and 13001, which Bernard Collett later testified he used to create the summary identified as Exhibit 15002. Tr. at 1527. DH fails to identify the check registers underlying the remaining exhibits of the 15000 Series.

Federal Rule of Evidence 1006 provides in relevant part:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006. Under Ninth Circuit law, "a proponent of a summary exhibit must establish a foundation that (1) the underlying materials on which the summary exhibit is based are admissible in evidence, and (2) those underlying materials were made available to the opposing party for inspection." Amarel v. Connell, 102 F.3d 1494, 1516

(9th Cir. 1997) (citing <u>Paddack v. Dave Christensen, Inc.</u>, 745 F.2d 1254, 1259 (9th Cir. 1984)).  "The purpose of the availability requirement is 'to give the opposing party an opportunity to verify the reliability and accuracy of the summary prior to trial.'" <u>Id.</u> (citing <u>Paddack</u>, 745 F.2d at 1261).  Failure to make available the materials underlying a summary exhibit, renders that summary exhibit inadmissible, <u>Id.</u> (citing <u>United States v. Miller</u>, 771 F.2d 1219, 1238 (9th Cir. 1985)).

Exhibit 15002 purportedly is a summary of DH's expenditures, by check, in connection with the promotion of DH's health supplement products by Erasmus.  The exhibit is based on Exhibits 13000 and 13001—evidence that was otherwise admissible and that was made available to Erasmus.  Accordingly, we cannot say that the district court abused its discretion in admitting Exhibit 15002 into evidence under Rule 1006.  With respect to the remaining exhibits in the 15000 Series, DH asserts that the exhibits were properly based on accounting documents authenticated by Ms. Rensing.  However, as noted above, DH fails to identify the particular accounting documents upon which the summaries are based.  In addition, it offers no support from the record that these documents were made available to Erasmus.  Finally, the admission of the remaining exhibits in the 15000 Series was clearly prejudicial to Erasmus given DH's nearly singular reliance on the 15000 Series.  <u>See</u> <u>City of Long Beach v. Standard Oil Co.</u>, 46 F.3d 929, 936 (9th Cir. 1995) (noting that evidentiary rulings are reviewed for an abuse of discretion and should not be reversed absent some prejudice).

The evidence presented by DH is insufficient as a matter of law to support the breach of fiduciary duty damages award.  First, even if the entire 15000 Series had been properly admitted by the district court, the fact still remains that DH failed to

present any evidence, in the form of lay or expert testimony, as to why all of the costs of promoting DH's health supplement products in connection with Erasmus constitute economic losses resulting from Erasmus's breach of fiduciary duty. Second, DH failed to present any evidence to explain why payments made to Erasmus as a director and manager of DH constitute economic losses resulting from Erasmus's breach of fiduciary duty.

Because the record evidence does not sufficiently support the jury's breach of fiduciary duty damages award against Erasmus, the district court's denial of JMOL as to the damages award is reversed.

III.

For the foregoing reasons, we reverse the damages awards against Erasmus and the Flora Companies for fraud in the amount of $132,144 and $1,280,000, respectively, as well as the damages award against Erasmus for breach of fiduciary duty in the amount of $747,144.

We have carefully considered, but have not found persuasive, all other arguments made by the parties regarding the remaining aspects of the district court's final decision. Thus, this court affirms: (1) the district court's denial of JMOL with respect to the jury's verdict of liability against Erasmus and the Flora Companies for fraud and conspiracy to commit fraud, and against Erasmus for breach of fiduciary duty; (2) the district court's grant of summary judgment dismissing Erasmus's counterclaim for libel; (3) the district court's dismissal with prejudice of DH's patent infringement claims; (4) the district court's exclusion of Greither from punitive damages; (5) the district court's award of attorney's fees to the Flora Companies for defending against

DH's patent infringement and unfair competition claims; (6) the district court's award of attorney's fees to Erasmus for defending against DH's patent infringement and unfair competition claims; and (7) the denial of DH's claim for attorney's fees against Erasmus.

This court also denies the Flora Companies' motion for attorney's fees incurred in the defense of DH's cross-appeal of the district court's dismissal with prejudice of DH's patent infringement claims.

For the foregoing reasons, the decision of the district court is <u>affirmed-in-part</u> and <u>reversed-in-part</u>.

Each party shall bear its own costs.